### SOLOMON *v.* ARTHUR.

Imported goods composed of cotton and silk, the latter being the component part
 of chief value, were, by the act of June 30, 1864 (13 Stat. 202), subject to a
 duty of fifty per cent *ad valorem.*

ERROR to the Circuit Court of the United States for the
Southern District of New York.

This was an action brought by Solomon Solomon and others,
constituting the firm of Solomon Brothers, against Arthur, the
collector of the port of New York. The following facts were
admitted upon the trial, it being agreed that neither party
should offer any evidence.

Plaintiffs are partners in business, and as such imported at
the port of New York, in December, 1873, and January, 1874,
certain goods manufactured of silk and cotton. The defendant
exacted upon them a duty of fifty per cent *ad valorem*, which
rate the plaintiffs paid under protest, the substantial part of
which is, that under existing laws the goods are only liable
to a duty of thirty-five per cent, because they are provided
for at that rate by sect. 22 of the act of March 2, 1861, and
sect. 13 of the act of July 14, 1862. This protest was followed
by an appeal to the Secretary of the Treasury, who affirmed
the decision of the collector. This suit was brought in due
time.

The goods were composed of silk and cotton, in varying
proportions, the warp being all cotton and the filling partly
silk. It is admitted by the plaintiffs, for the purpose of this
case, that silk was the component material of chief value. The
goods generally are known in trade and commerce as goods
made of mixed materials, but each kind thereof is also known
by its specific name. If the plaintiffs are entitled to recover,
judgment shall be rendered in their favor for the difference
between thirty-five and fifty per cent, which amount is $461.75
gold, with $75.40 interest in currency.

The jury found a verdict for the defendant pursuant to the
instructions of the court, and the plaintiffs sued out this
writ.

*Mr. Edwards Pierrepont* and *Mr. William Stanley* for the plaintiffs in error.

The duty was exacted under the last clause of sect. 8 of the act of June 30, 1864, which imposes fifty per cent *ad valorem* " on all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for." 13 Stat. 202, 210.

It is plain that the commercial designation of the goods in question was, " goods made of mixed materials." A commercial designation is that " known in trade and commerce."

The tariff acts recognize two species of dutiable goods, into one of which silk must enter and be " the component part of chief value," and a totally distinct kind of " mixed goods," into which silk may or may not enter in part, as the case may be.

We invite attention to the act of Aug. 5, 1861, and the act of March 2, 1861. Sect. 16 of the latter act prescribes: "On silk ribbons, galloons, braids, fringes, laces, tassels, buttons, button cloths, trimmings, and on silk twist, twist composed of mohair and silk, sewing-silk in the gum or purified, and all other manufactures of silk or of which silk shall be the component material of chief value, not otherwise provided for, thirty per cent *ad valorem*." 12 Stat. 186. Sect. 22 describes the other kind, in these words : " Manufactures, not otherwise provided for, composed of mixed materials in part of cotton, silk, wool or worsted, or flax." Id. 192. Sect. 2 of the act of August 5, which raises the duty on silk goods to forty per cent, leaves that on " mixed goods " at thirty per cent. The enumeration of the silk goods on which the duty was raised to forty per cent is precisely the same, word for word, as in the preceding act. Id. 293.

By sect. 13 of the act of July 14, 1862, the duty on "manufactures composed of mixed materials in part of cotton, silk, wool, or worsted, hemp, jute, or flax," was raised to thirty-five per cent. Id. 557.

No higher duty than thirty-five per cent had ever been imposed by any statute upon this class of goods. And it is here to be noted that the statute of 1862, which increased the duty on "manufactures composed of mixed materials," did not

change the duty upon goods of which silk was the component material of chief value.

The attempt is now made to strain the statute of 1864, relating to silk goods, to cover "manufactures composed of mixed materials," into which silk may so enter as to form the more costly part.

After enumerating some thirty silk manufactures, the section ends in the words we have first quoted.

The class of goods "known in trade and commerce as goods made of mixed materials," which are specifically named in the other statutes, and upon which the duty was in 1861, thirty per cent, and in 1862 thirty-five per cent, is nowhere alluded to in this statute of 1864. Sect. 22 expressly provides "that the duties upon all goods, wares, and merchandise imported from foreign countries not provided for in this act shall be and remain as they were, according to existing laws prior to the 29th of April 1864" (13 id. 216), and "that all acts and parts of acts repugnant to the provisions of this act be, and the same are hereby, repealed."

Thus we find running through the statutes these two classes of manufactures : those into which silk must enter; and the "mixed manufactures," into which silk might, or might not enter. It is an admitted fact that the goods in question are generally known in trade and commerce as goods made of mixed materials; but inasmuch as "silk was a component material of chief value," it is argued by the learned Assistant Attorney-General that these "mixed goods" must pay a duty of fifty per cent, under the act of 1864, which relates to a totally different kind of goods.

Surely no such construction can fairly be given to the acts, and such ruling would be quite out of harmony with numerous decisions of this court. *Arthur* v. *Zimmerman*, 96 U. S. 124; *Arthur* v. *Unkhart*, id. 118; *Arthur* v. *Lahey*, id. 112; *Arthur* v. *Davies*, id. 135; *Arthur* v. *Homer*, id. 137; *Reiche* v. *Smythe*, 13 Wall. 162; *Homer* v. *The Collector*, 1 id. 486, and the long list of earlier cases on commercial designation.

*Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

It is obvious that the goods in question came under the designation of the last clause of sect. 8 of the act of June 30, 1864 (13 Stat. 210), which lays a duty "on all manufactures of silk or of which silk is the component part of chief value, not otherwise provided for, fifty per centum *ad valorem*." That duty was, therefore, properly assessed, unless the articles imported were "otherwise provided for." And that is the question. The plaintiffs insisted then, and insist now that a duty on these goods was "otherwise provided for" by the acts of March 2, 1861, sect. 22, and July 14, 1862, sect. 13, as "manufactures composed of mixed materials, in part of cotton, silk, wool or worsted, or flax," on which a duty of only thirty per cent was laid by the act of 1861, and of five per cent additional by the act of 1862. 12 Stat. 192, 557.

Previous acts were not repealed *in toto* by the act of June 30, 1864, but it was declared by sect. 22 that "all acts and parts of acts repugnant to the provisions of this act be, and the same are hereby, repealed," with a proviso "that the duties upon all goods, wares, and merchandise imported from foreign countries, not provided for in this act, shall be and remain as they were, according to existing laws prior to 29th April, 1864."

The act of 1864 contained no separate provision for a duty on goods composed of "mixed materials," like that in the acts of 1861 and 1862, on which the plaintiffs rely. They contend, therefore, that those clauses still continued in force, and that the goods imported by them were embraced therein, and were not intended to be embraced in the general clause in the act of 1864, under which the collector exacted the duty in question. The plaintiffs insist that the term "mixed materials," or "goods made of mixed materials," is a specific and well-known commercial designation or name, which by usage covers the goods imported by them, and is not a descriptive phrase used merely to designate any class of goods answering to the description; and, therefore, although they may be embraced in the general description of the act of 1864, of goods "in which silk is the component part of chief value," such a general de-

scription is not sufficient to take them out of their places in the previous acts where they are designated by name. It may be conceded that if the goods in question had a specific name, such as that applied to "reps," "tapestry," "galloons," &c., and had been designated in the acts of 1861 and 1862 by such specific name, the argument of the plaintiffs would be well founded. It would be in accordance with the decision of this court in *Movius* v. *Arthur*, 95 U. S. 144. But are the terms relied on a name for goods? Are they not descriptive rather than denominative? We think it is very clear that they are merely descriptive. It may be true, as stated in the agreed case, that " such goods are generally known in trade and commerce as goods made of mixed materials;" but the case also adds that " each kind thereof is also known by its specific name." The fact that certain goods belong to the class of mixed goods, or of goods made of mixed materials, does not stamp them with the name of mixed goods; for the same description is applicable to many other kinds of goods, all having different names. It is not their name: it is merely their description.

Since, therefore, the designation in the act of 1861, of "manufactures composed of mixed materials, in part of cotton, silk," &c., is merely descriptive; and since the designation in the act of 1864, of " manufactures of which silk is the component part of chief value," is also descriptive; and since the goods in question are confessedly embraced in both descriptions; and since the act of 1864 contains no provision relating to mixed goods, like that in the acts of 1861 and 1862, and lays a duty of fifty per cent *ad valorem* on goods in which silk is the component part of chief value," not otherwise provided for," which we have construed generally to mean "not otherwise provided for in this act " (*Smythe* v. *Fiske*, 23 Wall. 374), — it seems to be almost a matter of demonstration that this was the duty properly demandable on the goods.

It is observable that the description of " manufactures made of mixed materials, in part of cotton, silk, " &c., is more general than that of " manufactures of which silk is the component part of chief value." Logically, the two phrases standing together in the same act or system of laws would be related as

follows: " Goods made of mixed materials, cotton, silk, &c., shall pay a duty of thirty-five per cent; *but if* silk is the component part of chief value, they shall pay a duty of fifty per cent."

It is suggested by the plaintiffs' counsel that a counterpart of the clause in the act of 1864, relating to goods in which silk is the component part of chief value, was contained in the acts of March 2, 1861, and Aug. 5, 1861; and that if this clause in these acts did not apply to the plaintiffs' goods, the like clause in the act of 1864 should not be construed to apply to them; and, to show that the said clause in the acts of 1861 did not apply to the goods, they refer to the fact that, prior to the passing of the act of 1864, the goods now in question were always assessed under the "mixed materials" clause, and not under the "component material of chief value" clause. We do not think that this argument can prevail. In the first place, it does not appear by the record what the practice was prior to 1864; and if it did appear as suggested, it is observable that under the act of March 2, 1861, it was a matter of indifference under which clause the goods should be assessed, as the duties were the same under both; and, having commenced to assess the goods in one way under that act, the practice may have been inadvertently continued. We think the practice was at least questionable, if it obtained. At all events, the true construction of the law in its ultimate form is too obvious to admit of a reasonable doubt. The goods are aptly described by the general clause in the act of 1864, and are not otherwise provided for in that act, nor provided for by name in any previous act. It follows that they are subject to duty under the said general clause.

We have been unable to find anything in the clauses referred to, or in their collocation in the various acts, or in the method of grouping or classification observed therein; that would lead us to infer an intention to exclude the goods in question from the operation of said general clause. It is sometimes the case, no doubt, that certain articles are so obviously intended to be included in a particular grouping or classification, as to repel any suggestion that they are meant to be embraced in a different part of the law, though literally appli-

cable to them. But this cannot be said in the case before us. The goods in question have no such inseparable relation to one form of description exclusive of the other; nor are they so clearly intended to be embraced in any particular grouping or classification, as to repel or prevent the application to them of the clause under which they were assessed.

*Judgment affirmed.*