UNITED STATES *v*. VANDEGRIFT & Co. (No. 730).[1]

WATERPROOF CLOTH COMPOSED OF WOOL, COTTON, AND RUBBER.

The merchandise here comes *eo nomine* under paragraph 378, tariff act of 1909, wherein provision is made for a duty on "all manufactures of every description made wholly or in part of wool"; it is dutiable thereunder and not as a manufacture with india rubber as the component of chief value.—Hartranft *v*. Meyers (135 U. S., 237) distinguished.

United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25910 (T. D. 31708).

[Reversed.]

*William L. Wemple*, Assistant Attorney General, and *Charles E. McNabb*, assistant attorney, for the United States.

*Walden & Webster* (*Henry J. Webster* of counsel) for appellants.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved here was stated in the return of the appraiser to be a manufacture of wool and rubber. In the answer to the protest it was described as waterproof cloth used in the manu-

[1] Reported in T. D. 32457 (22 Treas. Dec., 722).

facture of ladies' raincoats composed of wool, cotton, and rubber. The Government analyst reported it to be cloth consisting of cotton in the warp, wool in the filling with vulcanized rubber composition in coating, and rubber in chief value.

No evidence was taken before the board, and the report of the analyst is, in effect, conceded to be correct by both parties.

The board found the merchandise to be a material used in the making of raincoats composed of cotton, wool, and india rubber, of which india rubber is the component material of chief value. It was assessed by the collector under paragraph 378 of the tariff act of 1909 as a manufacture in part of wool. The assessment was protested by the importers, who claimed the importation was dutiable under paragraph 463 as a manufacture in chief value of india rubber.

The material parts of the competing paragraphs are as follows:

378. On cloths, knit fabrics, and all manufactures of every description made wholly or in part of wool, not specially provided for in this section, * * *.

463. Manufactures of * * * india rubber, * * * or of which these substances or any of them is the component material of chief value, not specially provided for in this section, * * *.

Upon the facts herein set forth the board reversed the collector, sustained the protest, and the case is here for review upon appeal by the Government.

The Government's claim is, in substance, that the importation is "cloth" within the meaning of paragraph 378, is made in part of wool, and is therefore eo nomine provided for thereunder; that paragraph 463 in terms is confined to manufactures of rubber in chief value not specially provided for and that therefore the former paragraph more specifically describes the article than does the latter.

The importers contend that the word "cloth" as used in the paragraph is only one of the subdivisions of the class—manufactures in part of wool—therein referred to, and therefore is not of controlling force in determining whether the merchandise is eo nomine thereby designated; in other words, that it should be treated as of no greater specificity than if the paragraph simply provided for manufactures of every description made wholly or in part of wool, which would, of course, include cloth made partly of that material. Citing Hartranft v. Meyers (135 U. S., 237) and other cases.

Assuming paragraph 378 should be so understood, the importers contend that paragraph 463, applying to manufactures of which india rubber is the component material of chief value, more specifically describes the merchandise.

In the Hartranft case paragraphs of Schedule K and Schedule L of the act of 1883 were under consideration, the competing provisions of which were as follows:

Schedule K:

Woolen cloths, woolen shawls, and all manufactures of wool of every description, made wholly or in part of wool, not specially enumerated or provided for in this act. * * *.

Schedule L:

All goods, wares, and merchandise not specially enumerated or provided for in this act, made of silk or of which silk is the component material of chief value. * * *.

The merchandise was matelasse cloth composed partly of silk, partly of cotton, and partly of wool, silk being the material of chief value, and the question was under which of the competing paragraphs it should be classified. This cloth was treated as a manufacture made in part of wool, and it was said that if either schedule stood alone the goods would obviously be dutiable thereunder, so the question of their relative specificity must be decided.

Referring to the character of the descriptive language used as determinative of the question of specificity the court said:

In Schedule K it is "made wholly or in part of wool," thereby reaching to all manufactured articles of which any portion is wool, while in Schedule L it is narrower and more limited, "made of silk, or of which silk is the component material of chief value." This is a special enumeration, rather than the other. This idea was presented in Solomon *v.* Arthur (102 U. S., 208, 212), in which the descriptions compared were these: "Manufactures composed of mixed materials, in part of cotton, silk," etc., and "Manufactures of which silk is the component part of chief value." Both expressions were held to be merely descriptive, and the true interpretation to be given to them was thus clearly stated by Mr. Justice Bradley in the opinion of the court: "It is observable that the description of 'manufactures made of mixed materials in part of cotton, silk,' etc., is more general than that of 'manufactures of which silk is the component part of chief value.'" Logically, the two phrases standing together in the same act or system of laws would be related as follows: "Goods made of mixed materials, cotton, silk, etc., shall pay a duty of thirty-five per cent; *but if* silk is the component part of chief value, they shall pay a duty of fifty per cent." Applying the same rule of construction here, the circuit judge, in deciding this case and holding that the goods were dutiable under Schedule L (Meyers *v.* Hartranft, 28 Fed. Rep., 358), well said that the statute was in substance to be read thus: "All manufactures of wool of every description, not especially enumerated or provided for in this act, shall be subject to a duty of thirty-five cents per pound and thirty-five per centum ad valorem; but if silk is the component material of chief value, they shall be subject to a duty of fifty per centum ad valorem." We think this construction harmonizes the two sections better than any other, and gives force to the intent of Congress.

The court further referred to the provision of the statute which, in case an importation fell within the nonenumerated class, provided that the rate of duty to be assessed thereon should be the highest rate chargeable on its component material of chief value, as indicative of the intent of Congress with reference to the question before the court. It may be noted that this provision is still a part of the law. (See par. 481.)

This case is authority for the proposition that the term "manufactures composed wholly or in part of wool" is less specific than the term "manufactures of which silk is the component material of chief value." Upon that question it is, and by reason of its convincing logic should be, conclusive, and has been so regarded. United States *v.* Johnson (154 Fed. Rep., 752); United States *v.* Johnson (157 Fed. Rep., 754); United States *v.* Slazenger (113 Fed. Rep., 524).

We have referred thus at length to the Hartranft case because of the reliance placed thereon by the importers and of its seeming applicability to the case at bar. From what has been stated we think it clearly appears that it is distinguishable from the case before us.

It is not contended here by the importers that the merchandise is not in fact cloth made wholly or in part of wool. It is therefore within the *eo nomine* description of paragraph 378 and it becomes unnecessary to look to any other paragraph to ascertain the rate of duty it should pay. Brody *et al. v.* United States (2 Ct. Cust. Appls., 15; T. D. 31573); Thomsen *v.* United States (*Ib.*, 37; T. D. 31590); Krauss & Co. *v.* United States (*Ib.*, 17; T. D. 31574); United States *v.* Zinn & Co. (*Ib.*, 419; T. D. 32171).

We have not specifically referred to the other cases relied upon by the importers because when analyzed they do not seem to be in conflict with the conclusion we reach in this case.

The judgment of the Board of General Appraisers is *reversed.*