## UNITED STATES *v.* SALFNER (No. 1690).[1]

1. CONSTRUCTION, PARAGRAPHS 310, TARIFF ACT OF 1913, AND 381, TARIFF ACT OF 1909.

Paragraph 310, tariff act of 1913, kept in full force and effect until January 1, 1914, not only the *rates* but also the *enumerations* of Schedule K, tariff act of 1909, except as otherwise specifically provided by the act of 1913. Consequently, the provision of paragraph 381, tariff act of 1909, in relation to "women's and children's dress goods * * * composed in whole or in part of wool" remained in full force and effect until January 1, 1914.

2. RELATIVE SPECIFICITY—PARAGRAPHS 381, TARIFF ACT OF 1909, AND 318, TARIFF ACT OF 1913.

With reference to women's and children's dress goods, composed in part of wool but in chief value of silk, the language "dress goods composed in part of wool," paragraph 381, tariff act of 1909, is more specific than the language "woven fabrics, in the piece or otherwise, of which silk is the component material of chief value," paragraph 318, tariff act of 1913.—Hecht & Co. *v.* United States (5 Ct. Cust. Appls., 261; T. D. 34444) distinguished.

3. DRESS GOODS OF WOOL AND SILK, SILK CHIEF VALUE.

Women's and children's dress goods, composed in part of wool but in chief value of silk, imported in November, 1913, were dutiable as "women's and children's dress goods * * * composed wholly or in part of wool," paragraph 381, tariff act of 1909.

---

[1] Reported in T. D. 36910 (31 Treas. Dec., 671).

United States Court of Customs Appeals, December 21, 1916.

APPEAL from Board of United States General Appraisers, Abstract 39119.
[Reversed.]
*Bert Hanson,* Assistant Attorney General (*Leland N. Wood,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument Oct. 25, 1916, by Mr. Hanson and Mr. Brown.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of certain women's and children's dress goods, composed in part of wool, but in chief value of silk, which was imported into this country in November, 1913. It may be noted that the present tariff act became effective on October 4, 1913.

The present importations were assessed with duty under the provision for "women's and children's dress goods  *  *  *  composed wholly or in part of wool," contained in paragraph 381 of Schedule K of the tariff act of 1909. This assessment under the act of 1909 upon merchandise imported in November, 1913, was made upon the alleged authority of paragraph 310 of the act of 1913, whereby certain provisions of the former act were continued in effect until January 1, 1914.

The importer protested against the assessment of the goods under the act of 1909, claiming them to be dutiable at 45 per cent ad valorem under paragraph 318 of the act of 1913, under the enumeration of "woven fabrics, in the piece or otherwise, of which silk is the component material of chief value."

The protest was submitted to the Board of General Appraisers and was sustained. The Government now appeals.

The following is a copy of the paragraphs which will be cited in this decision:

*Act of 1909.*

381. On women's and children's dress goods, coat linings, Italian cloths, bunting, and goods of similar description or character composed wholly or in part of wool, and not specially provided for in this section, the duty shall be eleven cents per square yard; and in addition thereto on all the foregoing valued at not above seventy cents per pound, fifty per centum ad valorem; valued above seventy cents per pound, fifty-five per centum ad valorem: *Provided,* That on all the foregoing, weighing over four ounces per square yard, the duty shall be the same as imposed by this schedule on cloths.

403. All manufactures of silk, or of which silk is the component material of chief value, including such as have India rubber as a component material, not specially provided for in this section, fifty per centum ad valorem: *Provided,* That all manufactures of silk enumerated under any paragraph of this schedule, if composed in any part of wool, shall be classified and assessed for duty as manufactures of wool.

*Act of 1913.*

310. The provisions of this schedule (K) shall be effective on and after the first day of January, nineteen hundred and fourteen, until which date the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect.

. 318. Woven fabrics, in the piece or otherwise, of which silk is the component material of chief value, and all manufactures of silk, or of which silk or silk and India rubber are the component materials of chief value, not specially provided for in this section, 45 per centum ad valorem..

*Free list.*

650. Wool of the sheep, hair of the camel, and other like animals, and all wools and hair on the skin of such animals, and paper twine for binding any of the foregoing. This paragraph shall be effective on and after the first day of December, nineteen hundred and thirteen, until which time the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect.

651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section. This paragraph shall be effective on and after the first day of December, nineteen hundred and thirteen, until which time the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect.

The first question which arises in the present case is whether the provisions of paragraph 381, act of 1909, remained in force until January 1, 1914, by virtue of the terms of paragraph 310 of the act of 1913. The importer contends that the latter paragraph was not designed by Congress to continue in effect the dutiable enumerations of the former Schedule K, but was designed only to continue in effect the rates of duty provided by the former schedule upon such enumerations as appeared alike in Schedule K of each act. According to this view paragraph 310 of the later act did not serve to extend the validity of the enumerations of the former schedule until January 1, 1914, but only to substitute until that time the former rates of duty for those prescribed by the latter schedule, in so far as the enumerations of the two schedules were identical. Inasmuch therefore as the enumeration of "women's and children's dress goods composed in part of wool" appeared only in the former schedule, and not in the latter one, it is argued that the rates imposed upon such goods by the former act were not imported into the latter one by force of the saving clause in question.

This interpretation was at one time placed by the Treasury Department upon paragraph 310 of the later act. In T. D. 33821, issued on October 23, 1913, the department said:

The department construes paragraph 310 to mean that only the articles and manufactures of wool provided for in paragraphs 286 to 309 of the present tariff act shall be subject to duty under the provisions of Schedule K of the tariff act of August 5, 1909, until January 1, 1914, and not that all articles and manufactures of wool, which were classified under Schedule K of the act of August 5, 1909, shall continue to be classified under the said schedule until January 1, 1914.

We are not able to agree with the foregoing interpretation of paragraph 310 of the act of 1913. It is of course plain that the rates of duty prescribed by Schedule K of the act of 1909 were in most instances largely reduced and in others wholly abolished by the act of 1913. In certain instances the dutiable enumerations in the latter act were altered as compared with the corresponding enumerations in the former act, whereby a reduction in their rates of duty was accomplished. It is clear that Congress enacted the saving provisions of paragraph 310 of the later act as a postponement of these reductions in order that reasonable time might be given both to importers and manufacturers to adapt themselves to the lower rates of duty. This legislative purpose applied alike to all of the contemplated reductions, regardless of the mere form of their ; do·ttion. This is well set out in the case of United States v. Klun.p ) (169 U. S., 209, 215), wherein Mr. Chief Justice Fuller said:

The reason for the postponing of the taking effect of the reduction of duties obviously had nothing to do with the process of manufacture, but related to the material of which the goods were composed, which material had been relieved from duty by paragraph 685 of the act.

Congress undoubtedly concluded that the manufacturers of goods from wool had laid in a large stock of material which equitably they should be allowed a reasonable time to work off and that there was probably on hand a large stock of goods, to dispose of which reasonable time should be allowed, rather than that the large dealers should be induced to bring in foreign goods at a cost which involved ruinous competition; while at the same time the wool growers ought to have their original market until they could adjust themselves to the new condition of things.·

The specific rate was compensatory, and, when stricken out, and the duty on raw material abolished, a postponement was provided for in order to avoid injustice.

But the reason for postponing the reduction on manufactures of wool, which, on the face of the act, we think properly imputable to Congress, is as applicable to worsted goods as to any other goods fabricated from wool.

For the accomplishment of the legislative purpose above set out, paragraph 310 of the act of 1913 was enacted. It provided that the provisions of Schedule K of the later act should not become effective until January 1, 1914, and that until that date "the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect." The latter provision applies literally to all of the rates of duty prescribed by the earlier schedule, and not to part of them only. It is true that the provision in question applies in terms to the "rates of duty" provided by the former schedule and not to its enumerations or classifications of merchandise for duty; but the former reference necessarily includes the latter, since the rates of duty of the former schedule can not "remain in full force and effect" unless the dutiable enumerations to which those rates applied shall likewise remain in full force and effect. And this view is favored by a consideration of the legislative intent in the enactment of the saving clause in question, as above set out

We conclude therefore that the saving clause of paragraph 310, *supra*, applied to all of the enumerations for duty included within Schedule K of the former act, in the absence of provisions in the later act in the nature of specific exceptions thereto.

We find such exceptions to the foregoing provisions in paragraphs 650 and 651 of the free list of 1913. These paragraphs are copied in full above; they provide for the free entry of wool of the sheep, hair of the camel and other like animals, wool wastes, etc., subject to a proviso that the paragraphs shall not be effective until December 1, 1913, "until which time the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect." It may be noted that the wool, hair, and wool wastes, just named, were made dutiable by Schedule K of the act of 1909; it may also be noted that paragraphs 650 and 651, *supra*, fix December 1, 1913, instead of January 1, 1914, as the time up to which "the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect."

According to our view the provisions of these paragraphs merely constitute exceptions to the rule declared by paragraph 310 of the same act. That paragraph provided in general that the dutiable provisions of Schedule K of the former act should continue in force until January 1, 1914. But paragraphs 650 and 651 provide that in respect to wool, wool waste, etc., the provisions of the former schedule should continue in effect until December 1, 1913, only, after which time the merchandise thus specifically enumerated should be admitted free of duty. It is true that this interpretation attaches a narrower signification to the clause "until which time the rates of duty now provided by Schedule K of the existing law shall remain in full force and effect," when found in paragraphs 650 and 651, than that given the same language when found in paragraph 310. Nevertheless we think that this difference of interpretation is justified and required by the different contexts of the two clauses and their relative positions in the act.

We conclude, therefore, that the provisions of paragraph 381 of the act of 1909 in relation to "women's and children's dress goods * * * composed in whole or in part of wool" were in full force and effect in November, 1913, at the time of the importation of the present merchandise, and that the merchandise responds to the description thereof. The next question which arises is whether the provisions of paragraph 318 of the act of 1913, for "woven fabrics, in the piece or otherwise, of which silk is the component material of chief value," is more specific in its application to the present merchandise than the enumeration of "women's and children's dress goods * * * composed in part of wool." It is conceded that the goods in question are in fact women's and children's dress goods,

composed in part of wool; it is also conceded. that they are woven fabrics composed in chief value of silk. We find, furthermore, that such provision is modified by the clause, "not specially provided for in this section."

In comparing the two competing provisions in question we find that one is limited primarily to "dress goods," the other to "woven fabrics." It must be conceded that "dress goods" is a more narrow term than "woven fabrics," and is indeed a species thereof. On the other hand, the term "woven fabrics" in the present case is modified by the clause "composed in chief value of silk," which is more narrow and specific than the contrasting modifying clause "composed in part of wool." -Hartranft v. Meyers (135 U. S., 237). In such a case we think that the primary or *eo nomine* limitations embodied in the contrasting enumerations should control, and accordingly we hold that "dress goods composed in part of wool" is a narrower and more specific description of the present merchandise than "woven fabrics, in the piece or otherwise, of which silk is the component material of chief value." Brody v. United States (2 Ct. Cust. Appls., 15; T. D. 31573); Thomsen v. United States (*Ib.*, 37; T. D. 31590); Krauss v. United States (*Ib.*, 17; T. D. 31574); United States v. Zinn (*Ib.*, 419; T. D. 32171); United States v. Vandegrift (3 Ct. Cust. Appls., 161; T. D. 32457); Bister v. United States (59 Fed., 452); Greenfield case, G. A. 5799 (T. D. 25629); and G. A. 4126 (T. D. 19249).

In the case of Brody v. United States, *supra*, this court held that an enumeration of "baskets of wood" should prevail over one for "manufactures of willow," the merchandise being baskets made of willow.

In the case of Thomsen v. United States, *supra*, this court made a similar decision in favor of an enumeration of "baskets of wood" as against one of "manufactures of chip," the merchandise being baskets made of chip.

In the case of United States v. Vandegrift, *supra*, this court held that a provision for "cloth    *    *    *    made wholly or in part of wool" was more specific than one for "manufactures of    *    *    *    india rubber    *    *    *    or of which these substances or any of them is the component material of chief value," the merchandise in the case. answering to both of the competing descriptions.

In the case of Bister v. United States, *supra*, the Circuit Court of Appeals, Second Circuit, held upon a similar issue in favor of a provision for "women's and children's dress goods composed wholly or in part of wool," as against one for "manufactures of which silk is the component material of chief value," the merchandise in question responding in character to each enumeration. The court, speaking by Wallace, Chief Justice, said:

It seems hardly debatable that if one provision of a tariff act should prescribe a duty on wearing apparel and another on all manufactures of which silk is the material of chief value, the former would supply the proper classification for an article of wearing apparel made of silk. * * * The case falls within the general rule that where a tariff act imposes a duty on an article by a specific name or description, general terms in the act, though embracing it broadly, are not applicable to it. The general must give way to the particular.

The reasoning of this decision was approved rather than departed from by the later decision of the same court in the case of Stern *v.* United States (98 Fed., 417).

In the Greenfield case, *supra,* the Board of General Appraisers similarly held in favor of a provision for "clothing * * * in part of wool," as against one for "manufactures in chief value of fur," the merchandise being overcoats made in chief value of fur.

Reference is made in argument to the case of Hecht & Co. *v.* United States (5 Ct. Cust. Appls., 261; T. D. 34444) as a conclusive authority in support of the importer's claim upon the subject of the relative degree of specificity of the competing provisions now in question, but we think that the present question does not come within the ruling made in that case. The comparison before the court in the Hecht case was between "clothing, ready made, and articles of wearing apparel of every description * * * composed wholly or in part of wool," and "clothing, ready made, and articles of wearing apparel of every description, * * * of which cotton or other vegetable fiber is the component material of chief value * * * *and not otherwise provided for in this section.*" The presence of the modifying clause, "not otherwise provided for," in the one provision and its absence from the other was regarded by the court as the controlling factor in the case, and decision was entered accordingly. In the present case, as already stated, the two competing provisions are alike modified by the clause "not specially provided for in this section."

The importer presents in his brief the claim that the merchandise at bar if imported before October 4, 1913, would have been dutiable under Schedule K of the tariff act of 1909 only by virtue of the proviso of paragraph 403 of that act, and that since this proviso was not a part of Schedule K and therefore was not extended by the terms of paragraph 310, *supra,* the present merchandise should not be assessed under Schedule K as extended by that paragraph.

We do not enlarge upon this branch of the argument because of our foregoing conclusion that the provisions of paragraph 381 of Schedule K of the act of 1909 taken alone apply more specifically to the merchandise at bar than do the competing provisions of paragraph 318 of the act of 1913, and therefore paragraph 403 of the act of 1909 becomes unimportant in relation to the assessment.

We hold that the decision of the board sustaining the importer's protest was erroneous, and it is *reversed.*