UNITED STATES *v.* STONE & Co. (No. 2524)[1]

EVIDENCE PRESUMPTION FAVORING COLLECTOR—SUFFICIENCY TO REBUT—
    TANNED RUSSET HIDES.

Where the collector classified the merchandise as bag, strap, or case leather in the crust (paragraph 1431, Tariff Act of 1922), he is presumed to have found that it was chiefly used for the purpose of making finished bag, strap, or case leather. *Esposito et al v. United States,* 12 Ct. Cust. Appls. 334, T. D. 40485. This presumption is not overcome by evidence that one manufacturer used such leather exclusively for making enameled upholstery leather. *Vandiver v. United States,* 1 Ct. Cust. Appls. 194, T. D. 31219. Such leather, invoiced as "tanned russet hides," is dutiable as found by the collector, and not free under paragraph 1606 as "leather not specially provided for." *United States v. Redden,* 13 Ct. Cust. Appls. 224, T. D. 41177.

United States Court of Customs Appeals, November 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 48263

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument May 18, 1925, by Mr. Hoppin]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal was invoiced as "tanned russet hides." It was assessed for duty by the collector at 20 per centum ad valorem under paragraph 1431 of the Tariff Act of 1922, which provides as follows:

PAR. 1431. Chamois skins, pianoforte, pianoforte-action, player-piano-action leather, enameled upholstery leather, bag, strap, case, football, and glove leather, finished, in the white or in the crust, and seal, sheep, goat, and calf leather dressed and finished, other than shoe leather, 20 per centum ad valorem.

It is claimed to be free of duty under paragraph 1606 of the Tariff Act of 1922, which reads as follows:

PAR. 1606. Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

The merchandise in question in this case is similar to that involved in protest 969910, which was held by the Board of General Appraisers to be free of duty under paragraph 1606, supra. The record in that case was offered and admitted in evidence in this case.

---

[1] T. D. 41180.

On the trial before the Board of General Appraisers a witness for the importer testified on cross-examination as follows:

Q. Where did you see this leather?—A. In our factory at Twenty-second and Union, Chicago.

Q. You are speaking now of the leather in this importation?—A. Both importations.

Q. It is not used solely for upholstery purposes, is it?—A. Yes; the way it is tanned, it is.

Q. *You mean by your firm only?*—A.*Yes, sir; it would have to be retanned to be used in any other purpose.*

Q. Why?—A. Because we take all the oil out.

Q. Can not use any that has oil in it?—A. No, sir.

Q. That oil has been removed before importing?—A.Yes, sir.

Q. What do you do with it when you get it?—A. We dye it in different colors with water dye.

Q. How thick a leather is it?—A. It is about, I should say, a sixteenth of an inch thick.

Judge WAITE. What kind of leather is it—calfskins?

WITNESS. Steer hides. [Italics ours.]

On the trial before the board in protest 969910, the same witness, Morris Rowe, testified in part as follows:

Q. For how many years have you been dealing in or handling leather like Exhibit 1?—A. Seventeen years.

Q. For what purpose or purposes is it used according to your experience?—A. For upholstering furniture.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

Q. Have you ever known it to be used for any other purposes?—A. No, sir.

Q. You don't think it is fit for any other use?—A. I don't think it is.

Q. What is about it so as to render it unsuitable for the manufacture of cases or bags?—A. It is not tanned properly for that purpose.

Q. Is there anything about the weight of it that renders it unsuitable for that use?—A. *That I would not know. I don't know anything about the bag business.*

Q. But you regard it as upholstery leather, is that it?—A. Yes, sir; that is what we buy it for. [Italics ours.]

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

Benjamin V. Harrison, a witness for the Government, testified, in substance that the leather in question was not processed beyond the tanning stage; that leather "in the crust" was leather tanned but not further processed, and that the leather in question was "in the crust;" that it was suitable for bag, strap, case, and upholstery work.

William Hatton testified that the leather represented by Exhibits 1 and 2 was tanned in the same manner as illustrative Exhibit 3. It appears that illustrative Exhibit 3 was representative of the merchandise involved in the case of *United States* v. *Redden*, 13 Ct. Cust. Appls. 224; T. D. 41177, decided concurrently herewith, which was held by this court to be dutiable as bag, strap, or case leather in the crust under paragraph 1431, supra. This witness further said that the leather, represented by Exhibits 1 and 2, could be made

"* * * into bag leather or case leather, or strap leather, or upholstery leather, * * *." He also testified as follows:

Q. * * * Is there a difference in trade understanding between finished enameled upholstery leather and enameled upholstery leather in the crust?—. A. Yes; finished enamel. The finish is the finished article, and leather in the crust is half finished.

Q. You have both of those things in the commercial usage?—A. Well, it is; as I have testified in the previous case, we at times sold leather in the crust; what I mean is that term is used in the crust, in the white, or in the russet.

Q. Do you sell upholstery leather in the crust?

*           *           *           *           *           *           *

A. We have at times sold leather in the crust, or you may call it in the russet, or in the white, ready for finishing to our purposes.

*           *           *           *           *           *           *

Q. Would these two samples be particularly adapted for upholstery leather, bag leather, or strap leather, or what?—A. As I testified before, this leather can be taken and made into any of those particular grades that you have mentioned.

Q. You mean if they come in a full-size hide?—A. Yes, sir; or even if they come in half hides you can make bag and case leather, but you can't make upholstery leather of them. They have to be full hides.

Q. They are adaptable for making bags or case leather?—A. Or upholstery leather.

On cross-examination the witness testified in part as follows:

Q. It is a fact, isn't it, Mr. Hatton, that the ultimate use of leather depends quite largely upon the tannage to which it has been subjected; that is, it is tanned differently according to the use to which it is ultimately to be put?—A. Yes, sir; sole leather is tanned differently from harness leather, etc. The tannage of bag and case leather is identical. We have two plants and the tannage is practically identical. In the upholstery leather we split our hides and they are half tanned, and the other way we split them when they are full tanned.

*           *           *           *           *           *           *

Q. When leathers are used as upholstery leathers or in the manufacture of upholstery for automobiles are not they sometimes used without being enameled, and sometimes in their natural state, or colored otherwise?—A. No; you have got to put a finish on upholstery leather.

Q. But it is not always enameled; it may be another kind of finish?—A. You have got to put some kind of finish on to make it weatherproof—to give it a wearing surface.

Q. That term, in the crust, means just what—leather in the crust?—A. Leather in the unfinished state, such as this.

Q. That would be synonymous, would it, with what you would term rough leather?—A. Yes; rough or in the white, or in the russet.

*           *           *           *           *           *           *

Q. Do you regard bag leather the same as case leather?—A. Case leather is smooth, just as smooth as this table here, and bag leather is boarded like this, to work the grain up. The grain is worked up like this, to bring that grain up.

Benjamin V. Harrison, jr., a witness called by the Government, testified in part as follows:

*           *           *           *           *           *           *

Q. Have you made sales at and immediately prior to the passage of the act of 1922, of the kind of merchandise under the name of bag leather in the crust?— A. Yes.

Q. Case leather in the crust?—A. Yes.

Q. Strap leather in the crust?—A. Yes, sir; with this distinction, that it *might
be all three of those things in the crust.*

Q. Then I will ask you if those exhibits, Nos. 1 and 2, would be designated in
the wholesale trade and commerce as bag, strap, or case leather in the crust?—
A. Or *enameled* or *upholstered* leather.

\*        \*        \*        \*        \*        \*        \*

: Q. Leather in the crust is a term which is generally applied to the rough or
unfinished leather?—A. Rough leather and leather in the crust are pretty nearly
synonymous.

Q. They may be used for various purposes; that is, leather in the crust may be
made into upholstery leather or into bag leather or case leather or football leather,
as the case may be; is that correct?—A. Not quite.  Leather in the crust such
as that can be only put to those purposes; that is, they would not be suitable for
shoe leather or for pianoforte.  Up to a certain point those leathers are all for the
same, and from there on they vary.

Alfred J. Worsdell, a witness called by the Government, testified
in part as follows:

Q. Look at these Exhibits 1 and 2 and state if they were in full size hide, if
they would be of a kind of leather that is suitable for use as bag leather or case
or strap leather?—A. Yes, sir.

Q. And upholstery leather?—A. Yes, sir.

\*        \*        \*        \*        \*        \*        \*

Q. Is there a trade term, or where at and immediately prior to the passage of
the tariff act of 1922, of bag leather in the crust?—A. Yes, sir.

Q. And the merchandise was sold under that term?—A. Yes, sir.

Q. In wholesale quantities?—A. Yes, sir.

Q. Would these two samples, Exhibits 1 and 2, come within that trade desig-
nation?—A. Yes, sir.

\*        \*        \*        \*        \*        \*        \*

Q. Might it sometimes be referred to, that is, this leather, as unenameled up-
holstery leather?—A. Yes.

\*        \*        \*        \*        \*        \*        \*

Q. The ultimate use of any given lot of leather depends very largely, does it
not, upon the tannage to which it has been subjected?—A. Very much so.

With reference to the evidence in the case the Board of General
Appraisers said:

The testimony introduced in this case shows that the leather involved has been
tanned but not finished; in other words, it is in the curst stage but not finished
or processed for any particular use.

The board, however, held that the merchandise was entitled to
free entry and sustained the protest.

It is the claim of the appellee that the imported leather is uphol-
stery leather, not enameled, and therefore not provided for in para-
graph 1431, supra, and that it is free of duty under paragraph 1606,
supra.

In the case of *Esposito et al.* v. *United States*, 12 Ct. Cust. Appls.
334, T. D. 40485, this court said:

From that it follows that paragraph 1431 includes both finished and unfinished
glove leather and that it is not limited to glove leathers which as imported are
suitable for conversion into gloves without further processing.  To hold other-

wise, would strike from the paragraph the words "in the white or in the crust," and that of course can not be done if they are susceptible of an interpretation which would give them effect. We think they are susceptible of such an interpretation and that they were used by Congress to meet the decision of this court in the Keshishian case. We are of the opinion that glove leathers "in the white and in the crust" means all leathers designed to be converted into finished *glove leathers* and chiefly used for that purpose. The presumption of correctness attaching to the collector's classification carries with it the presumption that goods of the kind imported are chiefly used for the purpose of making finished glove leathers, and from that we must conclude that they are dutiable as assessed under paragraph 1431.

There was no evidence introduced on the trial below as to the chief use of the imported leather. The witness for the importer testified that the company with which he was connected used it exclusively for making enameled upholstery leather, but he gave no information as to its use generally in this country, and it is evident that he was not sufficiently informed upon the subject to testify in that regard.

We think it appears from the evidence that the merchandise is leather in the crust; that it has not been so processed as to dedicate it to one particular use, but that it might be converted into finished bag, strap, or case leather, or enameled upholstery leather.

Bag, strap, or case leather in the crust is specially provided for in paragraph 1431, supra, and such leather, when further processed into finished bag, strap, or case leather, is likewise provided for therein.

The collector classified the merchandise as bag, strap, or case leather in the crust. It will therefore be presumed that he found that it was chiefly used for the purpose of making finished bag, strap, or case leather. *Esposito et al.* v. *United States, supra.*

This presumption has not been overcome by evidence that one manufacturer used such leather exclusively for making enameled upholstery leather. *Vandiver* v. *United States*, 1 Ct. Cust. Appls. 194, T. D. 31219, and authorities therein cited.

The judgment is *reversed.*