UNITED STATES v. PARRY (No. 2724)[2]

RELATIVE SPECIFICITY—EQUIPMENT FOR BALL GAMES—SHOES OF LEATHER—SOCCER FOOTBALL SHOES.
 Free list, paragraph 1607, Tariff Act of 1922, providing for leather shoes, is more specific than paragraph 1402, calling for equipment not specially provided for, for playing games. Cleated leather shoes are used for many other purposes than football; and such shoes for playing soccer football are free under paragraph 1607.

United States Court of Customs Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, Abstract 50724

[Affirmed.]

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Kenneth G. Osborn*, special attorneys), for the United States.
 No appearance for appellee.

[Oral argument, May 13, by Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Soccer football shoes, imported at the port of Chicago, were classified by the collector of customs as equipment for playing football, and were assessed with duty at 30 per centum ad valorem under that part of paragraph 1402 of the Tariff Act of 1922, which reads as follows:

PAR. 1402. Boxing gloves, baseballs, footballs, tennis balls, golf balls * * * designed for use in physical exercise or in any indoor or outdoor game or sport, and all clubs, rackets, bats, or other equipment, such as is ordinarily used in conjunction therewith in exercise or play, all the foregoing, not specially provided for, 30 per centum ad valorem.

The importer protested that the merchandise was boots or shoes in chief value of leather and therefore exempt from duty under section 201 and paragraph 1607 of the free list, which section and paragraph, in so far as pertinent, read as follows:

FREE LIST

SEC. 201. That on and after the day following the passage of this act * * * the articles mentioned in the following paragraphs, when imported into the United States, * * * shall be exempt from duty.

PAR. 1607. Boots and shoes made wholly or in chief value of leather.

The Board of General Appraisers sustained the protest and the Government appealed.

The uncontradicted evidence submitted to the board established that the goods imported are soccer football shoes which are used to play soccer football. The shoes, according to the testimony, have cleats nailed to the bottom and they are admittedly in chief value of leather.

The goods are certainly shoes in chief value of leather; and as such shoes are *eo nomine* provided for in paragraph 1607, that paragraph must be preferred for the classification of the goods when brought in competition with paragraph 1402, which provides for equipment for football games not specially provided for and not for shoes for football games. Shoes with cleats are used by lumbermen as footwear for walking in wooded areas and also by hunters and foot racers. Shoes made with a hinged cleat are also worn to prevent slipping on the ice. It is apparent, therefore, that the attaching to shoes of cleats or spikes, or other appliances for a special purpose, does not remove such footwear from the category of shoes. In the absence of evidence that the term "shoes" has a special meaning in the trade, which excludes footwear with cleats, we must hold that the goods imported are shoes.

As shoes are specifically provided for in paragraph 1607 we are of the opinion that the importation was entitled to free entry and the judgment of the board (now the United States Customs Court) is therefore *affirmed*.

### DISSENTING OPINION

BLAND, Judge: Soccer football shoes are not specially provided for in the free list paragraph 1607. The provision for shoes is not an *eo nomine* provision for soccer football shoes. *Eo nomine* provisions, whether they contain the definitely described or generally described article, have been given, by rule of construction, preference over less definite and less specific enumerations. This is only a rule of construction and is only applicable where the intention of Congress is not otherwise indicated.

In my judgment, Congress did not intend for the provision for "shoes made wholly or in chief value of leather" to include soccer football shoes, which are used only in playing the game of soccer football, and which are designed and intended for that purpose and are essential to the proper, safe, or efficient playing of such game.

All the above characteristics of the shoes in controversy are either proved in the case, or found by the collector in his assessment of them for duty under paragraph 1402.

It is evident that Congress, by paragraph 1402, intended to gather within that paragraph all sporting goods, so-called, belonging to the class there indicated, unless for some special reason they were provided for elsewhere by name. The importation is not elsewhere provided for by name. Congress can hardly be presumed to have intended that tennis shoes of cloth should be classified under paragraph 1402 at a duty of 30 per centum, or under paragraph 1405 at 35 per centum, while soccer football shoes and baseball shoes of leather should be on the free list. The legislature evidenced a wish to invade other paragraphs and make a uniform duty on most sporting goods, but it has never indicated such generosity toward them as to warrant the belief that it meant them to be free of duty.

Without going into the details of the history of the free list paragraph of boots and shoes, I think it is sufficient to state that Congress did not intend to put sporting goods in the same category with laboring men's shoes. Practically every citizen in the United States wears shoes, but very few, comparatively, wear soccer football shoes or tennis shoes. The conclusion that Congress did not intend to include sporting goods in the shoe paragraph is strengthened immeasurably by a full consideration of the history of the paragraph.

The doctrine of classification by use should, also, have an important bearing in this case.

For these and other reasons I must dissent from the conclusion reached by my colleagues.