UNITED STATES v. PARRY (No. 2724)[1]

United States Court of Customs Appeals, May 27, 1927

[Oral reargument December 17, 1926, by Mr. Oscar Igstaedter, special attorney, for the United States]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

On the 29th of May, 1926, this court held that soccer football shoes, classified by the collector at the port of Chicago as equipment

---

[1] T. D. 42233.

for playing football, were shoes in chief value of leather and, therefore, entitled to free entry under paragraph 1607 of the Tariff Act of 1922. The judgment of the Board of General Appraisers sustaining the importer's protest was, therefore, affirmed. *United States* v. *Parry*, 14 Ct. Cust. Appls. 172, T. D. 41696. On the 25th of June, 1926, the Government filed a petition for a rehearing and therein prayed the court to reconsider its decision on the ground that the provision in paragraph 1402 for equipment such as is ordinarily used for the playing of ball games was a designation by use and was, therefore, more specific than the provision for shoes in paragraph 1607 of the free list. The petition for a rehearing was granted and the case was reargued and submitted.

On the hearing before the board the importer testified that the articles imported were soccer football shoes composed of brown leather and with six leather cleats nailed to the bottom; that the shoes were used to play soccer football and for no other purpose; that by removing the cleats the shoes might be used as working footwear but not as street wear.

The term "equipment" in paragraph 1402 is expressly limited to such articles *as are not specially provided for*, and therefore excludes from the operation of the paragraph everything more specifically enumerated elsewhere in the act. The evidence establishes beyond question that soccer football shoes are part of the equipment which is used in the playing of soccer football. The shoes are made wholly or in chief value of leather and shoes of leather are specially provided for without restriction in paragraph 1607 of the free list. The goods imported are equipment for the playing of soccer football and are at the same time shoes of leather. As shoes of leather are specially provided for in paragraph 1607, they are equipment specially provided for and are, therefore, excluded from the operation of paragraph 1402, which by its terms is limited to equipment *not specially provided for*. To reach any other conclusion we must hold that soccer football shoes of leather are not shoes of leather, and to hold that means that whether certain kinds of footwear should be classified as boots or shoes depends upon the purpose for which they are worn as coverings for the feet.

The weather, the nature of the surface which the wearer of shoes must tread, the rapidity of his pace, his occupation, the sport in which he is engaged, and even the social conventions dictate the kind of shoes which should be worn; and whether they are light or heavy, hobnailed, spiked, or cleated, they are still shoes.

The soccer football shoes of leather here involved are equipment ordinarily used for the playing of a ball game. Soccer football shoes are shoes of leather. Shoes of leather are *eo nomine* provided for and that designation includes soccer football shoes of leather and

shoes of leather of all kinds just as effectively as if they had been specifically named. *Schade & Co.* v. *United States,* 5 Ct. Cust. Appls. 465, 466; *Smillie & Co.* v. *United States,* 11 Ct. Cust. Appls. 199, 201. An *eo nomine* designation must prevail against terms of general description and designations which include not only the merchandise *eo nomine* designated but other things in the same class. *Chew Hing Lung* v. *Wise, Collector,* 176 U. S. 156, 160. Soccer football shoes of leather are *eo nomine* provided for as shoes of leather and as they are thereby specially provided for, they are excluded from the provision for equipment *not specially provided for.*

In *Drakenfeld* v. *United States,* 2 Ct. Cust. Appls. 512, Judge Martin, speaking for the court, held that cadmium sulphide, a pigment and at the same time a chemical compound or salt, was classifiable under the provision for "pigments not specially provided for" and not under the competing and more comprehensive provision for "* * * all chemical compounds and salts not specially provided for." In other words, it was held that as cadmium sulphide was a pigment, the enumeration "pigments not specially provided for" must prevail against the broader designation "chemical compounds or salts not specially provided for."

In *United States Snow's U. S. Sample Express Co.,* 6 Ct. Cust. Appls. 120, Judge Barber, speaking for the court, held that "shirt bosoms composed of cotton or flax, ornamented with loom-woven tucks, tuckings chief value," were wearing apparel, manufactured wholly or in part and at the same time articles made wholly or in part of tuckings. Paragraph 256 of the tariff act of 1913 provided for articles of wearing apparel of every description wholly or in part manufactured and not otherwise specially provided for. Paragraph 358 of that act provided for tuckings and for all articles made wholly or in part of tuckings. Compelled to determine under which of these competing provisions the merchandise was dutiable, the court definitely decided that "wearing apparel" was a narrower designation than "articles of tuckings" and that, therefore, the merchandise should be classified as "wearing apparel not specially provided for" and not as "articles made of tuckings."

In *Bischoff & Co.* v. *United States,* 7 Ct. Cust. Appls. 138, Judge Barber, speaking for the court, held that cigar lighters were provided for in paragraph 356 of the act of 1913 as "articles designed to be worn on apparel or carried on or about or attached to the person" and also in paragraph 381 under the designation "all smokers' articles whatsoever, not specially provided for." Judge Barber resolved the conflict by holding that paragraph 356 provided not only for certain smokers' articles by name but for all like articles and that, therefore, the cigar lighters were provided for in paragraph 356 and excluded from paragraph 381 which was limited to smokers' articles not specially provided for.

In *Drakenfeld* v. *United States*, 9 Ct. Cust. Appls. 124, in an opinion by Judge De Vries, this court held that *"Dunkelpurpur,"* a ceramic color and at the same time a salt or compound of which gold was the element of chief value, was more specifically provided for as " * * * ceramic * * * colors * * * not specially provided for" than under the broader designation "salts and other compounds and mixtures of which * * * gold * * * constitute the element of chief value."

In *Altman* v. *United States*, 11 Ct. Cust. Appls. 102, it was expressly held that a provision for Jacquard figured upholstery goods, which was a designation by use and *a designation without limitation*, could not be preferred for classification purposes to a provision for lace window curtains, *not specially provided for*. In this case, paragraph 1402 provides for equipment ordinarily used and *not specially provided for*, and just how that provision can be regarded as more specific than a provision for shoes of leather without limitation is not apparent.

In every one of the cases just referred to, the *eo nomine* designation, whether limited or not by the words "not specially provided for," has prevailed against a broader and more general designation under which the goods might have been assessed for duty if the *eo nomine* or less comprehensive designation had not been passed by Congress. To hold that shoes of leather used for the playing of soccer football must be classified as *"equipment ordinarily used" for the playing of ball games and not specially provided for* and not as *"shoes of leather"* would in principle reverse the *Snow* case, the *Bischoff* case, the *Altman* case, and both of the *Drakenfeld* cases.

In *Comstock & Theakston* v. *United States*, 12 Ct. Cust. Appls. 502, Judge Bland held for the court that titanium oxide, a physical combination of barium sulphate, was a pigment enumerated in paragraph 91 of the act of 1922 as "all combinations and mixtures containing titanium," and also in paragraph 68 as "pigments not specially provided for." Paragraph 91 covered *all* combinations and mixtures containing titanium, and as paragraph 68 was confined to pigments not specially provided for it was definitely decided that the latter provision was intended to catch all pigments not specially provided for and that the paragraph did not include any pigments which had been elsewhere covered.

Notwithstanding the fact that the evidence showed that the importation was used exclusively in the making of paints and that pigment is defined to be "a substance that is or can be used to impart color to bodies," the court refused to apply the doctrine of use in determining the classification of the merchandise. It will also be noted that the court did not hold that paragraph 91, providing for all compounds and mixtures containing titanium, would

prevail against a paragraph for pigments without limitation; much less did it hold that a paragraph for all compounds and mixtures containing titanium not specially provided for would control classification as against a provision for pigments. The *Comstock* case, therefore, can not be regarded as authority for holding that "equipment * * * not specially provided for," which includes leather shoes for soccer football, must prevail against a provision for shoes of leather, which provision contains no limitation whatever.

The judgment of the Board of General Appraisers, now the United States Customs Court, is therefore *affirmed*.

## DISSENTING OPINION

GRAHAM, Presiding Judge: When this cause was originally heard, I concurred in the majority opinion. Upon a rehearing, however, and upon a more careful examination of the record and issues involved, I regret to find myself out of harmony with the judgment heretofore entered herein by this court and the reasons stated therefor in the opinion. My reasons, briefly stated, are these:

The collector returned the merchandise herein for duty under paragraph 1402 of the Tariff Act of 1922, as soccer football shoes. In order to come to this conclusion and make the classification, it is a presumption of law, well recognized by us heretofore, that he found all the elements necessary to make such classification. *United States v. Vitelli & Son*, 5 Ct. Cust. Appls. 151; *United States v. Stone & Co.*, 13 Ct. Cust. Appls. 233, T. D. 41180; *United States v. Kaufman & Co.*, 14 Ct. Cust. Appls. 264, T. D. 41881; *United States v. Chichester & Co.*, 14 Ct. Cust. Appls. 71, T. D. 41579. One of these was that the merchandise in question was necessary to the safe, proper, and efficient playing of one of the ball games mentioned in said paragraph 1402. *Cruger's (Inc.) v. United States*, 12 Ct. Cust. Appls. 516.

There is nothing in the record to impeach or contradict this finding of fact which the collector thus is assumed to have made.

It will therefore necessarily be assumed, as a matter of law, that the soccer football shoes imported were necessary to the safe, proper, and efficient playing of one of said ball games, and as such are equipment within the meaning of said paragraph 1402.

Paragraph 1402 is a paragraph in which the classification is based upon use. It will be observed that the particular language involved here is "other equipment, such as is ordinarily used in conjunction therewith in exercise or play." We have held on numerous occasions, and it is undoubtedly the law, that a classification by use will prevail over a classification not so made, even though the latter be an *eo nomine* designation. *Magone v. Heller*, 150 U. S. 70, 73; *United*

*States* v. *Snow's*, etc., 8 Ct. Cust. Appls. 351; *Drakenfeld* v *United States*, 9 Ct. Cust. Appls. 124.

The majority opinion goes upon the theory that the language of paragraph 1607 "Boots and shoes made wholly or in chief value of leather" must be held to be more specific than "other equipment, such as is ordinarily used in conjunction therewith," because the latter language is limited and restricted in its operation by the words "not specially provided for." This conclusion, I believe, is erroneous. It has been uniformly held that where the words "not specially provided for" are thus used, they are only to be taken as a limitation of the words with which they are used when compared with some other equally specific provision of the statute not thus containing such words. *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124; *Altman & Co.* v. *United States*, 11 Ct. Cust. Appls. 102; *Comstock & Theakston* v. *United States*, 12 Ct. Cust. Appls. 502.

With this rule of law in mind, we find that the limitation "not specially provided for" refers to balls and equipment for ball games and physical exercises, and should only be held to apply to the same, if they be elsewhere named in the statute That some of these are so named, we find by reference to paragraph 1413, enumerating billiard, pool, and bagatelle balls. The words "boots and shoes" can not, in themselves, be held to indicate any such equipment. If this paragraph included specifically such terms as "football shoes" or "soccer shoes," then the paragraph would "otherwise specially provide for" some of the equipment referred to in said paragraph 1402. As paragraph 1607 fails to do this, I am constrained to come to the conclusion that the "not specially provided for" clause in 1402 was not intended to extend to paragraph 1607, and like paragraphs, but to only such as referred specifically to balls and equipment such as are alluded to in paragraph 1402.

To illustrate where the majority opinion would lead us, take the following illustration: Leather gloves are specifically made dutiable by paragraph 1433, according to their lengths. Under the majority opinion, baseball gloves or catchers' gloves, sometimes of enormous sizes, made and used for no other purpose than for playing baseball, would not be dutiable as equipment for playing a ball game under paragraph 1402, but as gloves under 1433. To mention this is to convince the mind that the Congress had no such construction in mind when it framed paragraph 1402, manifestly designed to be a sporting-goods paragraph. To so construe the statute does violence to the legislative intent.

For the reasons above given, I am of the opinion the judgment of the court below should be reversed.

186

BLAND, Judge: When this case was handed down, before rehearing, I dissented and expressed briefly most of the reasons hereinafter submitted. The opinion which follows, with certain modifications, was prepared with the view that it might express the views of the court. Unusual consideration has been given to this case, and I dissent again with more reluctance than formerly.

On the 29th of May, 1926, this court held that soccer football shoes, classified by the collector at the port of Chicago as equipment for playing soccer football, were shoes in chief value of leather, and therefore entitled to free entry under paragraph 1607 of the Tariff Act of 1922. The judgment of the Board of General Appraisers sustaining the importer's protest was therefore affirmed. *United States v. Parry*, 14 Ct. Cust. Appls. 172, T. D. 41696. On the 25th of June, 1926, the Government filed a petition for a rehearing and therein prayed the court to reconsider its decision on the ground that the provision in paragraph 1402 for equipment such as is ordinarily used for the playing of ball games was a designation by use, and was therefore more specific than the provision for shoes in paragraph 1607 of the free list. The petition for a rehearing was granted, and the case was reargued and submitted.

Paragraphs 1402 and 1607 of the Tariff Act of 1922 read as follows:

PAR. 1402. Boxing gloves, baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, designed for use in physical exercise or in any indoor or outdoor game or sport, and all clubs, rackets, bats, or other equipment, such as is ordinarily used in conjunction therewith in exercise or play, all the foregoing, not specially provided for, 30 per centum ad valorem; ice and roller skates, and parts thereof, 20 per centum ad valorem.

PAR. 1607. Boots and shoes made wholly or in chief value of leather.

A close study of the paragraph, when considered with other possible competing paragraphs, and their application to numerous kinds of imported articles, with widely differing characteristics, compels the conclusion that no very satisfactory judicial interpretation of the indefinite language used can be arrived at—certainly none that may not be attacked, from some angle, with very plausible argument.

Some of the perplexities involved may be suggested by the following interrogatories: Is the expression "equipment" broad enough to include clothing worn while playing the game, or while indulging in the exercises or sport? If so, does it include clothing chiefly used, exclusively used, or occasionally used? If "ordinarily used" implies that it is not always used, does it also imply that it may be used for other purposes as well? Do the words "ordinarily used" call for an application of the doctrine of use in classification, and, if so, is "ordinarily used" to be given the same meaning as "chief use" as heretofore applied by the courts in connection with the doctrine of use?

If an article is ordinarily used within the contemplation of the paragraph but is chiefly used in other ways, is it excluded from the paragraph?

These questions are propounded not for the purpose of being answered in this opinion, but as being illustrative of the difficulties that necessarily confront the customs officials and the courts in applying the paragraph to imported merchandise of the so-called equipment variety.

While the original opinion in this case did not find that the goods were not provided for in paragraph 1402, it held that paragraph 1607, for boots and shoes made wholly or in chief value of leather, specially provided for the merchandise; and that, since the so-called sporting goods paragraph applied only to goods not specially provided for, and since the *eo nomine* provision for shoes covered soccer football shoes, they were entitled to free entry under paragraph 1607.

Since the so-called sporting goods paragraph is ambiguous, not only in the terms used, but in punctuation and in the meaning and effect to be given to certain modifying clauses, especially when considered with other competing paragraphs of the same act, interpretation is necessarily called for. Both the trial court and this court have frequently attempted such interpretation in an effort to give to the paragraph and to other competing paragraphs such meaning as would be most likely to reflect the intent of the legislature. If such intent can be gathered from the language used, when considered with other language in the same act or prior acts, or from the history of such legislation, or from any other source, recognized in judicial construction, it is our duty to declare such intent even though in doing so some rule of construction may be violated. Rules of construction are the tools with which we seek to ascertain legislative intent. They are not inviolable and will not be adhered to if considerations more persuasive are in conflict with them.

I think Congress intended to gather into the so-called sporting goods paragraph all such equipment as reasonably falls within the terms of its provision and to reach out into all parts of the act and draw within the paragraph those things which may be elsewhere provided for, unless they are provided for elsewhere in such a manner as to indicate that they are ordinarily used in the exercise or play prescribed in the paragraph.

The words "shoes made wholly or in chief value of leather," as provided for in paragraph 1607, do not indicate an intention to include shoes like those in controversy "ordinarily used" in exercise or play. "Soccer football shoes" would indicate such an intention. "Billiard balls" is not only an *eo nomine* provision for a class of balls but definitely indicates their use.

In interpreting indefinite language and ambiguous provisions in a statute it is the duty of the courts, if possible, to give force and effect to each word, phrase, or expression indulged, not only in the provision the meaning of which is in doubt, but in all such other pertinent parts of the act as may be in apparent conflict or are competing in their nature. We should give effect in this instance, if possible, to the words "other equipment," to "such as is ordinarily used," and to "not specially provided for," as well as to "shoes made wholly or in chief value of leather" in paragraph 1607. We should avoid the anomalous result, if possible, of declaring that Congress meant to include polo caps, if exclusively used in polo for the safe, proper, and efficient playing of the game and if dedicated to the playing of the game, and at the same time deny classification, under the same paragraph, to soccer football shoes. Both seem to belong in the same class, and no good reason has been pointed out why they should not receive, and have not received, the same tariff treatment.

The courts, with very few exceptions, have held that an *eo nomine* provision is controlling as against a less definite or more general one. One of the exceptions to the rule is that an *eo nomine* provision must give way to a classification by use. It is also well settled that *eo nomine* provisions will not control where the intention of the Congress is otherwise indicated.

As a broad, general proposition "shoes made wholly or in chief value of leather" covers all kinds of shoes in chief value of leather worn as footwear by human beings, but in view of many considerations I think the words "shoes made wholly or in chief value of leather," as found in paragraph 1607, has reference only to such leather shoes as were used and worn by the American people, in general, and as leather shoes were ordinarily worn, and that said provision was not intended to cover a specialized class of shoes, which are designed for a specialized use, and for no other use, like the merchandise involved in this case. I, therefore, am of the opinion that soccer football shoes, which are used solely in connection with playing the game of soccer football, are not within the class of shoes which Congress intended to provide for in paragraph 1607.

In reaching the above conclusions, I would give special emphasis to the definition of equipment as laid down in *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516. Among other pertinent things, this court there said:

We are consequently of the opinion that the term "equipment" as used in paragraph 1402 means inanimate objects ordinarily used and needed or required for the safe, proper, and efficient taking of physical exercise with balls, and inanimate objects ordinarily used and needed or required for the safe, proper, and efficient playing of any indoor or outdoor ball game or sport.

I think this definition should be further qualified and limited by adding that such equipment should be equipment for the game or sport as distinguished from such equipment as is only equipment for the player, and further, that such equipment should be designed for and dedicated to such games or sports. The fact that the soccer football shoes may be also dedicated to the use of the player as wearing apparel does not prevent them from being dedicated to the game. In connection with the use of the words "designed for and dedicated to," I have in mind and desire to emphasize again the sentence in Judge Smith's opinion, in the *Cruger's* case, *supra*, to the effect that—

Articles which are not necessary or requisite for a special purpose or service and the use of which is dictated by fad, fancy, or fashion, can not therefore properly be called equipment.

The merchandise was found by the collector to be soccer football shoes and was assessed for duty at 30 per centum ad valorem under paragraph 1402 of the Tariff Act of 1922. This action, on the part of the collector, carries with it the presumption that he found the merchandise possessed all the elements and characteristics necessary to bring it within the paragraph. *United States* v. *Vitelli & Son*, 5 Ct. Cust. Appls. 151; *United States* v. *Stone & Co.*, 13 Ct. Cust. Appls. 233, T. D. 41180; *United States* v. *Kaufman & Co.*, 14 Ct. Cust. Appls. 264, T. D. 41881; *United States* v. *Chichester & Co.*, 14 Ct. Cust. Appls. 71, T. D. 41579.

There is nothing in the record to impeach or contradict this finding of fact which the collector thus is assumed to have made.

An examination of the provisions of the act as a whole I think indicates an intention on the part of Congress to group within paragraph 1402 all so-called sporting goods of the character indicated unless otherwise definitely and specifically described in such a manner as to clearly indicate a contrary intention. Paragraph 1402 provides for baseballs, footballs, tennis balls, golf balls, and then for *other balls*. Notwithstanding the broad provisions for balls in this paragraph, Congress saw fit to specially provide for "billiard, pool, and bagatelle balls."

In the *Cruger's* case we said:

As the record does not disclose that the polo caps and polo helmets are ordinarily used and needed or required for the proper, efficient playing of polo, or for the proper and efficient protection of the players thereof against the hazards of the game, we must sustain the conclusion reached by the board.

If the proof had shown, as it might well have shown, that the polo caps met the definition laid down, doubtlessly they would have been regarded as equipment under paragraph 1402. The evidence in the case at bar shows that soccer football shoes are used for no other

purpose than for playing soccer football and that they are specially cleated for use in that game.

From the description of the importation, from the testimony, and by virtue of the finding and classification of the collector, I conclude that the soccer football shoes in controversy are equipment under the definition laid down in *Cruger's, supra,* and under the definition as I would amend it in this case.

I can see no indication that Congress intended that polo helmets, if necessary to the safe and efficient playing of the game of polo, should be included in paragraph 1402, while soccer football shoes, which are solely used for playing the game, and which are clearly dedicated to the game, should be on the free list.

Furthermore, a consideration of the history of the boots and shoes legislation convinces me that when Congress put boots and shoes of leather on the free list it did not have in mind such sporting goods as are here under consideration.

If all other considerations were laid aside, I believe the doctrine of use should control the classification of the soccer football shoes herein involved. As was heretofore suggested the question may be asked, if the doctrine of use is applied, How can we depart from the doctrine of *chief use,* which has been adopted by the courts? To my mind this has been answered by Congress, where instead of *chief use* it has only required *ordinary use,* as embodied in the words "ordinarily used." Where Congress enumerates an article of commerce by use, such as "all substances *used only* for manure" and "all other substances *used chiefly* for fertilizer," it has been regarded as a very definite and specific provision and controlling even as against *eo nomine* provisions. In the instant case Congress has said "such as is ordinarily used." We applied the doctrine of use where Congress said "chiefly used," we applied the doctrine of use where Congress said "only used," and we should apply the doctrine of use where Congress says "ordinarily used."

The judgment of the Board of United States General Appraisers (now United States Customs Court) should be reversed.