UNITED STATES *v.* THE HALLE BROS. Co. (No. 3562)[1]

United States Court of Customs and Patent Appeals, December 5, 1932

*Charles D. Lawrence*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

*Puckhafer, Rode & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 11, 1932, by Mr Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain jig-saw puzzles, consisting of 100 pieces each, were imported at the port of Cleveland, Ohio, and were classified by the collector as

[1] T. D. 46077.

toys under the following portion of paragraph 1513 of the Tariff Act of 1930:

PAR. 1513. * * * all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development.

The protest of the importer claimed the goods to be dutiable under paragraph 412 of said act as manufactures of wood. The collector justified his classification by reference to T. D. 44598, 59 Treas. Dec. 269. This is a circular letter of instructions issued by the Commissioner of Customs in the Treasury Department, directing that thereafter jig-saw puzzles of 200 pieces or more should be classified according to their component material of chief value, and that those having less than 200 pieces be classified as toys. The letter recites that the ruling is made as a result of a request by American manufacturers that some artificial line of demarcation be set up between a toy and a manufacture of some component material. The commissioner thereupon adopted a stipulation which had been entered into by counsel in *Wunderlich* v. *United States*, Abstract 14283, 58 Treas. Dec. 1193, as a reasonable rule for fixing such a line.

Upon appeal, the United States Customs Court sustained the protest, and the Government has appealed. On the hearing before the trial court, Kathryn Gifford, buyer of toys and games for the importer was called and testified at length. From her testimony and from an inspection of the official sample it appears that each of the imported games consisted of a box containing 100 sawed wooden pieces, of various sizes and shapes. Upon one side of each of these pieces appears a part of a picture. The only indication in the sets of what the pictures may represent is a statement on the box of the official sample: "The Kill." The pieces are most complicated and unusual in shape.

Mrs. Gifford testified that in importer's retail establishment there was a special department devoted to adult games and that these puzzles were and had been sold for many years by the importers in this department; that the department was plainly marked "Adult games." She stated that she was familiar with jig-saw puzzles, and that it required an hour and five minutes of her time on the second attempt to put one of these puzzles together; that they were quite difficult and were beyond the ability of the ordinary child to solve. She fixed the age of a child, in general, as that portion of its life prior to the period of youth. She testified that these puzzles were used chiefly by convalescents, adults, and youths, and, while she admitted that exceptionally bright children might solve them, she gave it as her judgment that the ordinary child of ten or twelve would not be able to do so. She further testified that she had seen children attempt to

solve these puzzles but without success, and that clerks in her department had from time to time worked on similar puzzles for considerable periods, but that she had never seen one of them complete the solution of the puzzle.

The only testimony offered by the Government to rebut this testimony was the testimony of a witness that he had purchased one of these sets on the day of the trial in the toy department of the importer.

In addition to the testimony we have the sample before us. It is, as we have often said, a potent witness. *United States* v. *Frankel Imp. Co.*, 18 C. C. P. A. (Customs) 188, T. D. 44378. An inspection of this sample convinced the court below, as it does this court, that the imported puzzles are something more than toys. It is true that under the language of said paragraph 1513 it will be presumed that the imported articles, having been found to be toys by the collector, are chiefly used for the amusement of children. This presumption, however, disappeared when the testimony of the witness Kathryn Gifford and the sample were placed in evidence before the trial court.

It has been repeatedly held by this court that a presumption of correctness attaching to the collector's classification may be overcome by the probative effect of the samples in the case. *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T. D. 41461.

The question has been discussed in the argument of counsel as to what constitutes a child within the meaning of said paragraph 1513. We have had that matter before us in *United States* v. *Abercrombie & Fitch Co.*, 20 C. C. P. A. (Customs) 267, T. D. 46060, decided concurrently herewith. We there said that the term "child," as used in this statute, should be taken to mean the period of a person's life from birth to the age of puberty or to the age when youth begins. Reference has been had in that connection to the case of *United States* v. *Warne & Co.*, 18 C. C. P. A. (Customs) 380, T. D. 44638, where books for children's use were under consideration. We there said that a child did not necessarily mean a person up to the age when adolescence or youth begins, but was intended to include only children of a tender age. This conclusion was reached as a result of a consideration of the particular language involved in the paragraph of the law in question there. Here we do not have the same language and hence are not limited to the same construction.

The question of what is or is not a toy depends entirely upon the use to which the article is put. The artificial limit which the Treasury Department has set up in said T. D. 44598 can not be accepted as an infallible rule for the classification of jig-saw puzzles. Whether such a puzzle is or is not a toy will depend upon the particular circumstances of the case, as shown by the evidence therein, and the samples.

A significant fact which is called to our attention is the fact that said paragraph 1513, in reciting certain articles which are to be classified under this toy paragraph, names among others, "toy marbles, *toy games*, toy containers." (Italics ours.) It appears quite evident from this language that the Congress had in mind at the time of the enactment of this law that there were games which could not properly be classified as toys and which were adapted for the use of adults. In this case the importer has brought to the attention of the court certain sawed puzzles which it admits are toys, and should be classified as such. These are of wood, having a picture painted or pasted thereon, cut into a few pieces, with simple lines, and with some picture or similar guide for the child to work by, as it puts the puzzle together. Obviously these are toys and should be so classified. However, to classify the jig-saw puzzles before us as toys, when it is evident they require the skill of a comparatively mature mind for their solution, is to go beyond what we believe to have been the intent of the Congress.

It is argued by Government counsel that the testimony of the importer's witnesses is limited in scope and only covers the use which the importer makes of these articles. The use, it is said, must be the general chief use throughout the United States of these articles. Therefore, it is concluded, the importer having failed to make such general and broad proof, it can not be sustained in its claims. In support of this position, *United States* v. *Stone & Co.*, 13 Ct. Cust. Appls. 233, T. D. 41180, is cited.

The cited case dealt with bag, strap, or case leather in the crust. This court held that the presumption of correctness attaching to the collector's classification could not be overcome by proof that one manufacturer had used the material for some other purpose than as bag, strap, or case leather. The rule there announced was sound, for it is quite apparent that this court could not take judicial notice of the chief use to which leather in the crust might be put.

The case is different here. It is entirely within the scope of the court's judicial knowledge how the articles imported here may be used. The samples speak for themselves. It may be desirable that some arbitrary dividing line be fixed between those jig-saw puzzles which are toys and those which are not. If so, the Congress must fix such line. In the absence of such legislation each case must be determined on its own facts.

The judgment of the United States Customs Court is *affirmed*.