WILSON & SON *v.* UNITED STATES (No. 1521).[1]

1. JACQUARD FIGURED COTTON GOODS.
   Jacquard figured manufactures of cotton may be either laces or figured goods of cotton, not lace at all, and accordingly the term is more comprehensive than a provision limited to a particular class of figured goods known as laces or lace articles.

---

[1] Reported in T. D. 35476 (28 Treas. Dec., 952).

2. PARAGRAPH 358, TARIFF ACT OF 1913.

Paragraph 358 provides for laces, articles of lace, and all articles or fabrics made wholly or in part of lace of any kind, of whatever yarns, threads, or filaments such laces, articles, or fabrics may be composed, and as well for nets, nettings, flouncings, edgings, and insertings of whatever yarns, threads, or filaments composed. This furnishes a more specific description of the goods here and controls.

## United States Court of Customs Appeals, May 21, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7686 (T. D. 35140):

[Affirmed.]

Walden & Webster for appellants.

Bert Hanson, Assistant Attorney General (Charles E. McNabb, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Jacquard figured nettings, flouncings, edgings, insertings, Valenciennes edgings, and Valenciennes beadings, conceded to be wholly or in chief value of cotton, were assessed for duty at 60 per cent ad valorem under that part of paragraph 358 of the tariff act of 1913 which reads as follows:

358. Laces, lace window curtains not specially provided for in this section, coach, carriage, and automobile laces, and all lace articles of whatever yarns, threads, or filaments composed; * * * and all other articles or fabrics made wholly or in part of lace or of imitation lace of any kind; * * * edgings, insertings, * * * nets, nettings, * * * flouncings, * * *; all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad volorem.

The importers protested, first, that the merchandise was lace window curtains, pillow shams, and bed sets, finished or unfinished, made of cotton or other vegetable fiber on the Nottingham lace curtain machine and dutiable under paragraph 265 at 35, 40, or 45 per cent ad valorem according to count of points or spaces; second, that the merchandise was plain gauze or leno woven cotton nets or nettings, dutiable as cotton cloth at 30 per cent ad valorem under the provisions of paragraph 252; third, that the importation was composed of articles made from cotton cloth or manufactures of cotton, cotton chief value, not specially provided for, dutiable at 30 per cent ad valorem under paragraph 266; fourth, that the merchandise was either Jacquard figured upholstery goods of cotton, dutiable at 35 per cent ad valorem, or other Jacquard figured manufactures of cotton, dutiable at 30 per cent ad valorem under the provisions of paragraph 258; fifth, that the merchandise was imported in vessels registered under the laws of the United States and that they were therefore, in accordance with section 4, paragraph J, subsection 7 of the tariff act of 1913, entitled to a discount of 5 per cent from the duties imposed.

Paragraphs 265, 252, 266, and 258, and section 4, paragraph J, subsection 7, in so far as pertinent, read as follows:

265. Lace window curtains, pillow shams, and bed sets, finished or unfinished, made on the Nottingham lace-curtain machine, and composed of cotton or other vegetable fiber, when counting not more than six points or spaces between the warp threads to the inch, thirty-five per centum ad valorem; when counting more than six and not more than eight points or spaces to the inch, forty per centum ad valorem; when counting nine or more points or spaces to the inch, forty-five per centum ad valorem.

252. * * * Cotton cloth when bleached, * * * woven figured, * * * containing yarn, the average number of which does not exceed number nine, ten per centum ad valorem; * * * exceeding number ninety-nine, thirty per centum ad valorem; plain gauze or leno woven cotton nets or nettings shall be classified for duty as cotton cloth.

266. All articles made from cotton cloth, whether finished or unfinished, and all manufactures of cotton or of which cotton is the component material of chief value, not specially provided for in this section, thirty per centum ad valorem.

258. Curtains, table covers, and all articles manufactured of cotton chenille, or of which cotton chenille is the component material of chief value, tapestries, and other Jacquard-figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber; any of the foregoing, in the piece or otherwise, thirty-five per centum ad valorem; all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value, thirty per centum ad valorem.

J. Subsection 7. That a discount of five per centum on all duties imposed by this act shall be allowed on such goods, wares, and merchandise as shall be imported in vessels admitted to registration under the laws of the United States: *Provided,* That nothing in this subsection shall be so construed as to abrogate or in any manner impair or affect the provisions of any treaty concluded between the United States and any foreign nation.

The Board of General Appraisers overruled all of the claims of the protest except the fifth, which was sustained on a stipulation between the importers and the Government that the goods in question were imported in a vessel of American registry. The record does not disclose that any appeal was taken from the decision of the board other than that perfected by the importers. In support of their appeal the importers contend that the nettings, flouncings, edgings, insertings, and beadings are Jacquard figured and that they are more specifically provided for by paragraph 258 than by paragraph 358, the paragraph under which they were classified and assessed for duty.

The samples and the evidence in the case, we think, establish clearly and unmistakably that the nettings, flouncings, edgings, insertings, and beadings involved in this case are in truth and in fact either laces, lace articles, or articles or fabrics composed wholly or in part of lace. On the hearing before the board the importers contended that the goods and particularly the beadings were not so regarded in the trade. The proof adduced, however, at the hearing in support of that contention can hardly be considered as satisfactory when due consideration is given to the following extracts taken from the testimony of the importers' own witnesses.

, Joseph A. Williams:

Q. Will you select from the group of samples those that are nettings?—[Witness selects samples.] A. Right here.

Q. Well, now are these invoiced as either nets or nettings?—A. Net, nettings, or 42-inch all-overs.

\*          \*          \*          \*          \*          \*          \*

Q. (By Mr. Baldwin.) By all-overs you mean all over lace, do you?—A. Yes, sir.

Q. (By Mr. Webster.) Now, there are other goods on the invoices that are laces, are there?—A. Yes.

Q. Will you select the samples that represent the laces? [Witness selects samples.]

Q. Those that you select now, what do you call those, laces or lace edgings?—A. Lace edgings.

\*          \*          \*          \*          \*          \*          \*

Q. Now, what are those two items 26184 and 26187?—A. 187 is gold insertion and 184 is gold lace.

Mr. Webster. Mark those Exhibit 4.

Q. What is the item 26369?—A. Chentille insertion.

Mr. Webster Mark that Exhibit 5.

Q. Now, what are these items 18183, 6919, 6178, 6388?—A. Val insertions.

Mr. Webster Mark those collective Exhibit 6

Q. Now items 5592, 6177, 6723. 16160?—A. Val edgings

Mr. Webster Mark those collective Exhibit 7.

Q. Items 6425, 6823, 6291, what are those?—A. Val beadings.

Mr. Webster Those are offered as collective Exhibit 8.

Q. On and before October 3, 1913, what was the general name by which these three samples marked "Exhibit 8" were known in the trade?—A. Val beadings.

Q. If customers came to you and asked for a line of laces or cotton laces would you show them this article in with the others?—A. Unless they asked for beadings, no.

Q. Is it the general custom in the trade to include beadings under the term laces in dealings?—A. No, sir.

\*          \*          \*          \*          \*          \*          \*

Q. Are those samples in Exhibit 8 commercially known as insertions or insertings?—A. Val beadings.

\*          \*          \*          \*          \*          \*          \*

Q. (By Mr. Baldwin.) What department do you say you are in?—A. In charge of the import department and also salesman.

Q. All the merchandise of the company?—A. Just the laces.

Q. Just the laces?—A. Yes, sir.

Q. Do you sell at wholesale only?—A. Wholesale only, but I sell wholesale and retail customers.

\*          \*          \*          \*          \*          \*          \*

Q. Do you handle in your sales anything except laces?—A. No, sir.

Q. In your commercial understanding of the term, do you include nettings within the term laces?—A. No.

Q. Do you handle nettings?—A. Yes, sir.

Q. Then how do you answer my question as to whether you sell anything other than laces?—A. I did not think of it at the time that nettings were separate from laces. It is in the same department as laces.

Q. But do you in your department sell anything other than laces and nettings?—A. No.

Q. Then everything that you sell comes within the general term laces or nettings as understood by the wholesale trade?—A. As far as I am concerned. There are other departments of which I do not know.

\*          \*          \*          \*          \*          \*          \*

Q. Among those articles that are included in the general term of laces, there are some goods which you when you sell you call edgings?—A. Yes, sir.

Q. You do not call them laces, but you call them edgings, is that right?—A. Some times edgings, sometimes laces. A lace has an edge.

Q. The same is true of insertings? There are certain goods you sell as insertings? A. Inserting is an insertion and not a lace.

Q. You do not consider that the trade would classify insertion as a form of lace?—A. In a commercial way, yes.

Q. You think it would in a commercial way?—A. Yes.

　*　　　*　　　*　　　*　　　*　　　*　　　*

Q. What did you mean, then, when you said that you handled nothing but laces and netting?—A. Well, I want to say that we sell a beading and when we sell a beading we do not style it certainly as a lace.

Q. You mean you do not actually invoice it as a lace, but the trade has a general understanding of the meaning—the broad meaning of the term lace, hasn't it?—A. Yes.

Q. It was in that sense, wasn't it, that you used it when you said that you are a dealer in nothing but laces and nettings?—A. Yes, sir.

Q. And in that sense insertings and edgings and beadings would all be included in the general term lace, wouldn't it?—A. Yes.

Q. (By Mr. WEBSTER). I understand that these articles in Exhibit 8 are made after the manner of laces, are they not?—A. Yes, sir.

　*　　　*　　　*　　　*　　　*　　　　　*

Q. Do you handle any flouncings?—A. Yes, sir

Q. Edgings?—A. Yes, sir.

Q. Well, now, what is the difference between a lace and a flounce?—A. A difference in width.

Q. What do you mean by an edge?—A. An edge is from the narrowest width to 7 inches.

　*　　　*　　　*　　　*　　　*　　　*　　　*

Q. What do you call a beading?—A. Beading is an insertion with the lace separated by a ribbon.

Q. For putting the ribbon through?—A. Yes, sir.

## M. J. WENK:

Q. (By Mr. WEBSTER.) Now, will you tell the board what the general and usual trade name is of these articles, Exhibit 8?—A. These are beadings.

　*　　　*　　　*　　　*　　　*　　　*　　　*

Q. (By Mr. BALDWIN). In the course of your experience in selling goods you have learned the meaning of the term laces, haven't you?—A. Oh, yes.

Q. It is a rather broad term and includes a number of different kinds of goods, doesn't it?—A. Yes, sir.

Q. Includes laces made in several different ways, and in several different and many shapes?—A. Yes, sir; several makes.

Q. Isn't it a fact that an article that you may sell as an edging is at the same time a form of lace?—A. Yes, sir.

Q. You have sold edgings?—A. Yes, sir.

Q. When you have sold them you have sold them under the term edgings?—A. Yes, but if a man asks me for an edging I ask him what kind of an edging; there are several hundred kinds.

Q. He may mean a lace edging or some other sort?—A. He may say a Val edging or a Nottingham edging.

Q. By Val you mean what?—A. Valenciennes lace.

Q. So that Valenciennes edging or any of the common edges unless they are woven are forms of lace, aren't they?—A. Yes, sir.

Q. The same is true of insertions, is it not, in the trade understanding?—A. Well, there are lace insertions; yes, sir.

Q. There are lace flouncings?—A. Yes, sir; there are lace flouncings.

Q. There are lace beadings?—A. Lace all-overs.

Q. Lace beadings?—A. Val beadings.

Q. By that you mean Valenciennes lace beadings?—A. Yes, sir.

Q. Do these articles, Exhibit 8, come within that term?—A. This is a Valenciennes beading.

Q. Valenciennes lace beading?—A. Well, they would hardly ask for Valenciennes lace beading in the trade. They would simply ask for a Val beading.

Q. Isn't that a fact that the general trade understanding or knowledge is that when the word Val is used it means Valenciennes lace and nothing else?—A. Yes, sir; Valenciennes lace beading.

Q. One of the forms of the general broad class of laces; that is right, isn't it?—A. One of the forms, yes.

Q. (By Mr. WEBSTER.) In commercial parlance the article is never described as a lace?—A. No; you couldn't because if a man asked for a lace you are not going to send him a beading. If he asks for a lace, we usually send an edge. If he asks for lace insertion, we send lace insertion. If he asks for a lace flounce, we send lace flounce. The line is so vast that a man must give exactly what he wants.

   *       *       *       *       *       *       *

Q. Do you know how these articles, Exhibit 8, are used, Mr. Wenk?—A. Well, they are used for lingerie purposes, corset covers, etc., to draw the ribbons through.

Q. What is the object of the series of holes in the merchandise?—A. To draw the ribbon through.

The foregoing testimony, considered in conjunction with the samples, and fairly construed, means nothing more, in our opinion, than that all of the goods composing the importation are either laces, lace articles, or articles or fabrics composed wholly or in part of lace, to which specific names, determined by their use, have been given to distinguish them from other lace articles. See T. D. 21917, T. D. 21918, United States v. Blankenstein (91 Fed., 977).

Paragraph 358 provides for laces, articles of lace, and all articles or fabrics made wholly or in part of lace of any kind, of whatever yarns, threads, or filaments such laces, articles, or fabrics may be composed. It also provides for nets, nettings, flouncings, edgings, and insertings of whatever yarns, threads, or filaments composed. So that we find that all of the goods, with the exception of the beadings, are provided for, not only by that part of paragraph 358 which relates to laces, articles of lace, and articles or fabrics made wholly or in part of lace, but also by a provision of the same paragraph which specifically enumerates nettings, flouncings, edgings, and insertings. Beadings, it is true, are not provided for by that name in paragraph 358, but as the samples and the evidence in the record establish that the beadings are, like the other articles, either laces, or lace articles, or articles or fabrics composed wholly or in part of lace, that fact of itself brings them within the operation of paragraph 358.

As all the goods in question are covered by paragraph 358 it follows that they must be subjected to the duty therein prescribed unless

they have been more specifically provided for by some other provision of the tariff law, and that forces the determination of whether the designation in paragraph 258 "all other Jacquard figured manufactures of cotton" more specifically describes the merchandise than the *eo nomine* designations nettings, flouncings, edgings, and inser, tings set out in paragraph 358. We think it has been well settled by judicial decisions that when Congress in a tariff act has provided for an article by a specific name and imposed a duty upon it such a provision must prevail over a provision in which the article is not enumerated *eo nomine*, but is covered by terms of general description. United States *v.* Haaker & Co. (4 Ct. Cust. Appls., 471, 473; T. D. 33884), Arthur *v.* Lahey (96 U. S., 112, 113), Vietor *v.* Arthur (104 U. S., 498, 499), Robertson *v.* Glendenning (132 U. S., 158, 159), Chew Hing Lung *v.* Wise, collector (176 U. S., 156, 160).

Inasmuch, therefore, as the nettings, flouncings, edgings, and inserting are expressly named in paragraph 358, they must be held to be more specifically provided for therein than in paragraph 258, which, if it describes them at all, describes them as Jacquard figured manufactures of cotton. Even if the nettings, flouncings, edgings, and inserting were not mentioned *eo nomine* in paragraph 358 they would nevertheless be covered by the provision thereof for laces, lace articles, and articles or fabrics made wholly or in part of lace. Now, laces, lace articles, and articles or fabrics made wholly or in part of lace, and of whatever yarns, threads, or filaments composed, are a peculiar, particular, and specific kind of figured goods. Jacquard figured manufactures of cotton, on the other hand, may be either laces or figured goods of cotton which are not lace at all, and consequently a provision for Jacquard figured manufactures of cotton must be regarded as more comprehensive than a provision which is limited to that particular class of figured goods known as laces, lace articles, or articles or fabrics composed wholly or in part of lace. As the provision for Jacquard figured manufactures of cotton is broader than both of the provisions of paragraph 358 under which the lace nettings, flouncings, edgings, and inserting might be classified, and as the beadings are within the meaning of the paragraph either as laces, lace articles, or articles or fabrics composed wholly or in part of lace, we must conclude that all of the goods in controversy were dutiable as assessed by the collector.

Counsel for the importers in suit No. 1520, Carter *v.* United States, which was argued with this appeal, contend in effect that Jacquard figured goods of cotton are more specifically provided for in paragraph 258 as "all other Jacquard figured manufactures of cotton" than by a provision which provides for them by name, but does not designate them as Jacquard figured. This contention is premised on the following propositions: First, that the provision for all other Jacquard

figured manufactures of cotton can not be considered as a designation describing in general terms a particular class of figured goods, but must be regarded as a group enumeration of all Jacquard figured manufactures of cotton; second, that the last clause of paragraph 258 will be rendered wholly ineffective and inoperative if preference be given to provisions in which goods are identified by their names, but not designated as Jacquard figured. Both of these propositions are mere assumptions and we find nothing in paragraph 258 or in any other part of the act which would justify us in accepting either as correct.

"All other Jacquard figured manufactures of cotton" may be regarded as a group enumeration in the sense that it is comprehensive enough to embrace all Jacquard figured manufactures not provided for in the paragraph, but to say that it is a group enumeration in the sense that it must be accepted as the equivalent of a provision designating *by name* every article, class, and kind of Jacquard figured manufactures of cotton not mentioned in paragraph 258 is an assumption which we think is entirely gratuitous. Certainly no such assumption is justified by the history of the legislation, the language of the act, or the relation one to the other of its several provisions. If paragraph 258 were the only paragraph under which Jacquard figured goods were classifiable, that paragraph, although its terms are those of general description, would of course cover all such goods just as effectively as if they had been designated therein by name. That result, however, would have to be attributed to the all-embracing terms of the provision rather than to any interpretation which would give to it the status of an *eo nomine* enumeration. But paragraph 258 is not the only paragraph applicable to the merchandise. There are other paragraphs of the law which expressly provide for the goods, not by description, but by name, and brought into competition with such provisions the last clause of paragraph 258 can not be given a scope which is all comprising or an operation which is exclusive. To hold otherwise would simply mean the establishment of the revolutionary principle that when goods are within two or more provisions of the tariff act preference for classification must be given to the one which describes the goods in general terms rather than to the one which provides for them denominatively, and that we think can not be done in the face of the long-established rule that where goods are within the terms of two or more provisions of the tariff act that provision which is the more specific determines the classification.

The second proposition advanced by the importers depends for its force on the assumption that the last clause of paragraph 258 can be given no effect unless it be held to be more specific than *eo nomine* provisions in which goods subjected to duty are not designated as

Jacquard figured. That assumption, even if it were true, can not be accepted as conclusive of the intention of Congress to subject to the operation of the clause in question all Jacquard-figured goods not elsewhere provided for as Jacquard figured, inasmuch as the provision may have been passed merely as a precautionary measure to cover manufactures and contingencies which the Congress felt that it was unable to foresee. Moreover, it can not be safely said that an interpretation which denies to the clause " all other Jacquard figured manufactures of cotton" the specificity of an *eo nomine* enumeration would of necessity leave the provision without effect for lack of goods to which it might be applied. Indeed, such an examination of the act as we have been able to make inclines us at this time to a contrary view. That Congress had no intention of making paragraph 258 all controlling in so far as Jacquard figured manufactures of cotton are concerned we think is sustained in some measure by the fact that such an interpretation of the provision would result in the anomaly of subjecting to a duty of only 30 per cent ad valorem laces, nets, nettings, veils, veilings, and flouncings, figured on the Jacquard machine, whereas inferior laces and plain nets, nettings, veils, veilings, and flouncings would continue to bear the high rate of 60 per cent ad valorem.

The decision of the Board of General Appraisers is *affirmed.*