(C. D. 1202)

BENZIGER BROS., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 4, 1950)

*John D. Rode* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Arthur R. Martoccia* and *Chauncey E. Wilowski,* special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The two protests listed above present for our determination the question of the proper classification of certain imported merchandise which was classified by the collector in protest 143098–K as "Articles embroidered, Cornely machine embroidered cotton arts, not wearing apparel," and in protest 143500–K as "Cornely mach. embrd. articles of cotton. Parts of church vestments," and duty was levied thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930.

Plaintiff claims the merchandise to be properly dutiable at only 60 per centum ad valorem under said paragraph 1529 (a), as modified by the trade agreement with Switzerland, T. D. 48093 (69 Treas. Dec. 74), the pertinent part of which reads:

* * * galloons, flouncings, * * *; articles in chief value of one or more of the foregoing, except articles of wearing apparel not specified by name in this provision; * * * collars, cuffs, * * *; all the foregoing, finished or unfinished, however described and provided for in paragraph 1529 (a), which are embroidered or tamboured and which are wholly or in chief value of cotton: *Provided,* That this provision shall not apply to laces, lace fabrics, and lace

articles, made in any part on a lace machine, nor to articles or materials embroidered or tamboured in any part by hand or otherwise than with the use of multiple needle, Cornely, or Bonnaz embroidery machines  *  *  *  60 % ad val.

An alternative claim is made that the merchandise is properly dutiable at only 75 per centum ad valorem under said paragraph 1529 (a), as modified by the trade agreement with France, T. D. 48316 (69 Treas. Dec. 853), reading as follows:

Articles of wearing apparel, finished or unfinished, wholly or in chief value of cotton  *  *  *  however provided for in paragraph 1529 (a), in whole or in part of machine-made lace, or embroidered  *  *  *  75% ad valorem.

The pertinent part of paragraph 1529 (a) of the Tariff Act of 1930, under which classification was made, reads as follows:

*  *  *  and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured;  *  *  *  and fabrics and articles embroidered  *  *  *  all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished  *  *  *  by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads,  *  *  *  90 per centum ad valorem.

At the trial of this case samples of the imported merchandise were admitted in evidence and marked exhibit 1 and collective exhibit 2. Also certain pages of a catalog issued by the plaintiff herein were marked in evidence as illustrative exhibits 3, 4, and 5. In addition to these exhibits, counsel for the plaintiff offered the testimony of the secretary of the plaintiff, and counsel for the defendant offered the testimony of two witnesses, one of whom had been in the embroidery business for 65 years and the other having had 40 years' experience with lace companies.

Plaintiff's witness testified that his company handles sacred vessels, religious books, prayer books, bibles, clerical garments, and garments that are used in the conduct and performance of religious services, and that, in general, the plaintiff is a manufacturer of religious goods and clerical garments and a publisher of religious text books. The witness. testified further that the imported merchandise is used primarily in the manufacture of three different types of clerical garments, "one being an alb, which is a full length garment with a linen top, the lace is cut down to a size and then is attached to the upper portion which is of pure linen," as illustrated on pages 168–171 of illustrative exhibit 3; that it can be used for the manufacture of a rochet, which is illustrated on page 176 of illustrative exhibit 4; and is used in the manufacture of surplices, as shown on pages 164–166 of illustrative exhibit 5.

The witness also stated that, based upon his experience in dealing with such merchandise, he recognized the imported merchandise as embroidered flouncings and that such merchandise had been offered

to his company as flouncings, but was frank to admit that "We don't classify them as flouncings; in our advertising, the trade name has been embroidered nets or.laces." After having read to him the definition of a flouncing and a flounce from Webster's New International Dictionary, the witness stated:

The interpretation, my interpretation, the interpretation of the manufacturers of that material, the majority of them, will offer it for sale to firms such as ours as flouncing, and it is definitely my understanding that—and my idea—that is a flouncing.

   *   *   *   *   *   *   *

* * * a flouncing is usually a material in varied lengths, which can be purchased in any desired length, and the usual use for it is that it is used in making garments. They don't qualify or give an exact description of the garment, but it usually becomes the skirt of a garment.

Upon being interrogated by the court as to his definition of a flounce, the witness stated:

The flounce can be, and usually is, a piece of over-all embroidered material, whether it be net or lawn, that can be purchased in any desired length, for use primarily as a skirt in some sort of a garment.

Exhibit 1 measures 3½ yards in length by 38 inches in width. Its foundation is net, upon which has been worked, by means of a needle and thread, certain forms, figures, and designs, and which counsel for the respective parties agreed at the trial was embroidery. Collective exhibit 2 consists of two pieces of material, very similar to exhibit 1, except that these two pieces measure only 18 inches in length by 10 inches in width, and counsel also agreed that the forms, figures, and designs on this exhibit constituted embroidery. As to both the above exhibits, counsel for the plaintiff conceded at the trial that for each item of exhibit 1 there were imported two pieces of collective exhibit 2, and plaintiff's counsel stated, and it is shown by the record, that as imported these three pieces of merchandise were temporarily stapled together, as a matter of convenience.

The record shows that exhibit 1 is used in the manufacture of albs, rochets, and may also be used on altars, and that collective· exhibit 2 is used as cuffs on any particular vestment of which exhibit 1 forms a part.

One of defendant's witnesses stated that exhibit 1 was not a flouncing because it had been made specifically for a certain purpose, and had not been cut; that is not a flouncing because "this has to be flounced. Flouncing means gathering, ruffling." On cross-examination this witness stated that when he manufactures flouncings on a machine, they are sometimes gathered on the machine and sometimes they are not gathered on the machine. Upon being interrogated by the court, the witness gave the following answers:

JUDGE LAWRENCE: Mr. Bihler, have you manufactured flouncings?

THE WITNESS: I have.

JUDGE LAWRENCE: Do they come off the machine as flouncing?

THE WITNESS: They were termed flouncings.

\*   \*   \*   \*   \*   \*   \*

JUDGE LAWRENCE: \* \* \*   I am asking you, in the mechanical process of making flouncings, are they flouncings just as they emerge from the particular textile machine?

THE WITNESS: They were termed so, but they were not flounced.

JUDGE LAWRENCE: Exactly; they were flounced after they got into commerce?

THE WITNESS: That is right.

JUDGE LAWRENCE: So, now, is this fabric, Exhibit 1, of the design and character of material which you made on your machines as flouncings?

THE WITNESS: Yes, but then it would be longer.

JUDGE LAWRENCE: Now, if this article, Exhibit 1, this material, Exhibit 1, were five and a fraction or six yards long, would it then correspond to what you knew as flouncings?

THE WITNESS: It would be.   Those things are not made shorter than 10 yards and 15 yards.

JUDGE LAWRENCE: I mean, if it were 10 yards, then it would be what you knew as a flouncing?

THE WITNESS: That is right.

JUDGE LAWRENCE: But, the actual process of flouncing takes place after the product reaches the operator who is going to convert it into a gown or alb or surplice; is that right?

THE WITNESS: That is right.

The second witness, whose testimony was offered by the defendant, stated that exhibit 1 was a part of an ecclesiastical garment:

Because, obviously, the Cornely embroidery work has stopped at a specific point and hasn't been continued on.   If it were yardage, that embroidery would continue on to the end of the net, as long as the net existed prior to its application.

This witness also gave his definition of a flouncing as:

\* \* \*   a decorative fabric varying in width from over 12 inches to 60 inches wide of continuous yardage, the extent of which is to be determined by the limitations of the machine upon which it is made.

The witness further stated that he has never seen a flouncing made in a 3½-yard length "until I saw this exhibit"; that if a purchaser comes in and asks for 2½ yards of flouncing, the retailer cuts off 2½ yards from the continuing yardage of the bolt, and what the customer gets is 2½ yards of flouncings.

JUDGE LAWRENCE: What is there about Exhibit 1 which distinguishes it from a product which you know as a flouncing?

THE WITNESS: Only the fact that it is not a continuous yardage.

JUDGE LAWRENCE: I see.   But so far as the design and character of the article are concerned, it has the qualities and characteristics of flouncings, has it not?

THE WITNESS: Yes.

Plaintiff's witness, being recalled, stated that collective exhibit 2 was used by his firm exclusively in the making of a cuff.

Upon the record, counsel for the plaintiff contends in his brief filed herein, that the mere fact that exhibit 1 is imported in definite lengths of 3½ yards because said length may be highly suitable both economically and commercially for an intended use, does not mean that the imported material is anything more than flouncing, either in design, character, or use, and that since collective exhibit 2 is dedicated to the making of cuffs, such merchandise would fall squarely within the *eo nomine* provision for cuffs in the said Swiss Trade Agreement, and cites a number of authorities which it is urged support these contentions.

On the other hand, counsel for the defendant contends that the record establishes that the imported articles are not flouncings but embroidered articles, dedicated to a particular use, to wit, church vestments, and that they are not articles of wearing apparel, but mere parts of wearing apparel; that not one of the cases cited by counsel for the plaintiff is analogous to the instant case, and that therefore the collector's classification should be affirmed.

In Webster's New International Dictionary, second edition, page 972, flouncing is defined as "Stuff for making dress flounces; also, a flounce or flounces." The same authority defines a flounce as "A strip gathered and sewed on by its upper edge, and left hanging, esp. around the skirt of a woman's dress." In the Summary of Tariff Information 1929, page 2026, we find the following:

\* \* \* Flouncing may be of lace or of embroidered material, and is used for making deep ruffles or flounces, which are afterwards gathered or pleated at the edge which is sewn to the garment.

According to the "Digest of Trade Data Respecting the Products Affected by the Concessions granted by the United States" in the trade agreement with Switzerland, flounces (or flouncings) and allovers are included, and at page 223 that digest states:

Flounces are similar to edgings in that they have one straight edge and one scalloped edge; however, flounces vary in width from 12 to 36 inches while edgings are much narrower.

In the Dictionary of Tariff Information, page 430, the following appears:

\* \* \* Flouncing is textile material of any description used for making deep ruffles or flounces, usually gathered or pleated at one edge and loose at the other, the gathered edge being sewn to the garment.

In *United States* v. *Macksoud*, 27 C. C. P. A. (Customs) 218, our appellate court stated:

With respect to the testimony in the case, it should be said that there has been no effort to establish a commercial designation of the term "straight hemstitching" different from the common meaning of the term. Of course, the rule is that where testimony relates to common meaning only it is not binding upon the courts, but there are situations in which it is proper to look to it in connection

with the merchandise itself and in connection with the definitions of lexicographers and technical authorities. *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co., supra.* [18 C. C. P. A. (Customs) 279, T. D. 44450.] We think the instant controversy presents a situation of that character and, hence, have examined the testimonial record with great care.

We think the instant controversy presents a situation in which it is proper to look to the testimony in the record as to the common meaning of the term flouncing in connection with samples of the merchandise before us and in connection with the definitions of lexicographers and technical authorities, and we have therefore examined the testimonial record with great care.

Upon a full consideration of the record before us, as hereinbefore indicated, we find that the weight of the evidence establishes that the merchandise represented by exhibit 1, this being the 3½-yard piece of embroidered net, is in fact a flouncing, and as such we hold the same to be properly dutiable at only 60 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified by the Swiss Trade Agreement, *supra.* As to the merchandise represented by collective exhibit 2, this being the two short pieces of embroidered net stapled to exhibit 1, we find that the weight of the evidence definitely establishes this merchandise to be cuffs, which are *eo nomine* provided for in paragraph 1529 (a) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, *supra.* We, therefore, hold all of the merchandise represented by exhibit 1 and collective exhibit 2 to be properly dutiable at only 60 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, *supra,* as alleged by the plaintiff.

It will be observed that counsel for the defendant in its brief filed herein urges that for the plaintiff to succeed, it was incumbent upon it to show that the involved merchandise was manufactured by a Cornely or Bonnaz embroidery machine, and that there is not a scintilla of evidence to show upon what type of machine the involved merchandise was manufactured. In protest 143098-K the collector classified the merchandise as "Cornely machine embroidered cotton arts," and in protest 143500-K the collector classified the merchandise as "Cornely mach. embrd. articles of cotton." The finding of the collector that the embroidery on the merchandise, covered by the two protests listed above, was produced by means of a Cornely machine is presumptively correct, and until disproved by credible evidence, must be accepted by us.

The provision for "flouncings" and "cuffs" contained in the trade agreement with Switzerland, *supra,* being *eo nomine* designations, is unquestionably more specific than the provision for "Articles of wearing apparel, finished or unfinished," contained in the trade agreement with France, *supra.* Therefore, as between the two provisions

above set out, the merchandise here involved is more specifically provided for as "flouncings" and as "cuffs" under the trade agreement with Switzerland, *supra*.

Confirmation of the above holding is to be found in the case of *Wilson & Son* v. *United States*, 6 Ct. Cust. Appls. 255. According to the decision in that case, the merchandise involved consisted of jacquard-figured nettings, flouncings, edgings, insertings, Valenciennes beadings, and Valenciennes edgings, wholly or in chief value of cotton, which was classified under paragraph 358 of the Tariff Act of 1913, providing for:

> * * * all other articles or fabrics made wholly or in part of lace or of imitation lace of any kind; * * * edgings, insertings, * * * nets, nettings, * * * all of the foregoing of whatever yarns, threads, or filaments composed * * *.

Several claims for a lower rate of duty were made by the plaintiff in that case, but the one relied upon appears to be as "all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value, * * *" under paragraph 258 of the Tariff Act of 1913. In disposing of the question presented in that case, our appellate court said:

> Paragraph 358 provides for laces, articles of lace, and all articles or fabrics made wholly or in part of lace of any kind, of whatever yarns, threads, or filaments such laces, articles, or fabrics may be composed. It also provides for nets, nettings, flouncings, edgings, and insertings of whatever yarns, threads, or filaments composed. So that we find that all of the goods, with the exception of the beadings, are provided for, not only by that part of paragraph 358 which relates to laces, * * * but also by a provision of the same paragraph which specifically enumerates nettings, flouncings, edgings, and insertings. Beadings, it is true, are not provided for by that name in paragraph 358, but as the samples and the evidence in the record establish that the beadings are, like the other articles, either laces, or lace articles, or articles or fabrics composed wholly or in part of lace, that fact of itself brings them within the operation of paragraph 358.
>
> As all the goods in question are covered by paragraph 358 it follows that they must be subjected to the duty therein prescribed unless they have been more specifically provided for by some other provision of the tariff law, and that forces the determination of whether the designation in paragraph 258 "all other Jacquard figured manufactures of cotton" more specifically describes the merchandise than the *eo nomine* designations nettings, flouncings, edgings, and insertings set out in paragraph 358. We think it has been well settled by judicial decisions that when Congress in a tariff act has provided for an article by a specific name and imposed a duty upon it such a provision must prevail over a provision in which the article is not enumerated *eo nomine*, but is covered by terms of general description. United States v. Haaker & Co. (4 Ct. Cust. Appls., 471, 473; T. D. 33884), Arthur v. Lahey (96 U. S., 112, 113), Vietor v. Arthur (104 U. S., 498, 499), Robertson v. Glendenning (132 U. S., 158, 159), Chew Hing Lung v. Wise, collector (176 U. S., 156, 160).
>
> Inasmuch, therefore, as the nettings, flouncings, edgings, and insertings are expressly named in paragraph 358, they must be held to be more specifically provided for therein than in paragraph 258, which, if it describes them at all,

describes them as Jacquard figured manufactures of cotton. Even if the nettings, flouncings, edgings, and insertings were not mentioned *eo nomine* in paragraph 358 they would nevertheless be covered by the provision thereof for laces, lace articles, and articles or fabrics made wholly or in part of lace. Now, laces, lace articles, and articles or fabrics made wholly or in part of lace, and of whatever yarns, threads, or filaments composed, are a peculiar, particular, and specific kind of figured goods. Jacquard figured manufactures of cotton, on the other hand, may be either laces or figured goods of cotton which are not lace at all, and consequently a provision for Jacquard figured manufactures of cotton must be regarded as more comprehensive than a provision which is limited to that particular class of figured goods known as laces, lace articles, or articles or fabrics composed wholly or in part of lace. As the provision for Jacquard figured manufactures of cotton is broader than both of the provisions of paragraph 358 under which the lace nettings, flouncings, edgings, and insertings might be classified, and as the beadings are within the meaning of the paragraph either as laces, lace articles, or articles or fabrics composed wholly or in part of lace, we must conclude that all of the goods in controversy were dutiable as assessed by the collector.

See also *Julius Forstmann & Co.* v. *United States*, 28 C. C. P. A. (Customs) 222; *United States* v. *Decorative Novelty Co.*, 17 C. C. P. A. (Customs) 211; *United States* v. *American Import Co.*, 17 C. C. P. A. (Customs) 212; *Drakenfeld* v. *United States*, 9 Ct. Cust. Appls. 124; *Rosenberg* v. *United States*, 7 Ct. Cust. Appls. 213; *United States* v. *Vandegrift*, 3 Ct. Cust. Appls. 161; and *United States* v. *Parry*, 14 Ct. Cust. Appls. 172, on rehearing amplified and affirmed, 15 Ct. Cust. Appls. 180.

In *Carter & Son* v. *United States*, 6 Ct. Cust. Appls. 253, our appellate court appears to have reached a somewhat different conclusion from that reached in the above-cited cases, based upon an entirely different proposition of law, at least, as to a portion of the merchandise there involved. As to one class of goods, numbered 35135, it was held that the provision for "tapestries, and other Jacquard figured upholstery goods, composed wholly or in chief value of cotton or other vegetable fiber," in paragraph 258 of the Tariff Act of 1913, was more specific than the provision for "nets, nettings, * * * of whatever yarns, threads, or filaments composed," found in paragraph 358 of the same act based entirely upon congressional intent. However, in the same case, it was held that the provision for "all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value" in said paragraph 258 was less specific than the provision in said paragraph 358 for "nets, nettings, * * * of whatever yarns, threads, or filaments composed," the court concluding its opinion in the following language:

This leads us to the next question as to whether the provision for "all other Jacquard figured manufactures of cotton or of which cotton is the component material of chief value" is more specific than the provision for "nets, nettings." Without extending this opinion by a full discussion of this question, it will suffice to call attention to the case of Wilson v. United States, decided concurrently herewith. The question is quite different from that presented as to the "Jacquard

figured upholstery goods" above. In this clause there is no attempt to define the uses to which the Jacquard figured manufactures are to be put. The general clause under consideration appears to be more in the nature of a catch-all clause, and its provision for manufactures of cotton is broader than the *eo nomine* provision for nets and nettings, and for this reason, more fully elaborated in the opinion of my brother Smith, the opinion of the board, sustaining the assessment of the other articles as nets is *affirmed*, and as to 35135 *reversed*.

However, our appellate court did not have before it for construction in the *Carter* case, *supra*, the all-inclusive words which are found in the two provisions here under consideration, to wit: "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act." In the trade agreement with Switzerland the involved provision is "* * * however described and provided for in paragraph 1529 (a)," while in the French Trade Agreement the words are "* * * however provided for in paragraph 1529 (a)."

In *Blumenthal & Co.* v. *United States*, 14 Ct. Cust. Appls. 17, in construing the language here involved, our appellate court said:

* * * The rule that an *eo nomine* designation must be preferred where goods are within the terms of two or more paragraphs carrying different rates of duty can not, however, be applied in this case without ignoring the manifest intention of Congress clearly and unmistakably expressed in paragraph 1430. That paragraph provides that trimmings and ornaments *by whatever name known and to whatever use applied whether or not named, described or provided for elsewhere in this act shall be subjected to a duty of 90 per centum ad valorem.* By that language Congress left no doubt as to its intention, and, consequently, rules of construction or interpretation can not be invoked to give to the statute a meaning other than that which its terms clearly and plainly import.

To the extent indicated the specified claim in the two protests listed above is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.